IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
April 17, 2012 Session

## KIM BROWN
v.
## MAPCO EXPRESS, INC.

**Appeal from the Circuit Court of Shelby County**
**No. CT-005663-09   Karen R. Williams, Judge**

**No. W2011-01751-COA-R3-CV - Filed August 22, 2012**

This appeal involves claims arising from a verbal exchange at a gas station.  The plaintiff customer gave cash to a clerk employed at the defendant gas station to pay for gas.  After a verbal exchange between the clerk and the customer, the customer left the gas station.  The customer promptly filed this lawsuit, alleging a variety of tort claims, including defamation, false light in the public eye, and infliction of emotional distress.  The complaint sought damages in excess of a billion – with a "b"–  dollars.  The trial court granted summary judgment in favor of the defendant gas station.  The customer appeals.  We affirm.

**TENN. R. APP. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Plaintiff/Appellant Kim Brown, Memphis, Tennessee, self-represented

Kevin D. Bernstein, Memphis, Tennessee, for Defendant/Appellee Mapco Express, Inc.

## OPINION

### FACTS AND PROCEEDINGS BELOW

On November 22, 2009, Plaintiff/Appellant Kim Brown ("Brown") went to a gas station in north Memphis owned by Defendant/Appellee Mapco Express, Inc. ("Mapco"). When Brown entered the store, he told the clerk behind the counter, Mapco employee Mary Tyler ("Tyler"), that he wanted $5 worth of gas and then handed Tyler a $20 bill.  Allocating $5 for Brown's gas, Tyler gave him $15 in change.

According to Brown, a life-altering verbal exchange with the Mapco employee then ensued.[1] The record contains security-camera video, taken inside the Mapco store, of the incident at issue involving Brown, Tyler, and another Mapco employee behind the counter, Lashunna Aldridge ("Aldridge"). During the conversation, unidentified customers came in and out of the Mapco store.

Dissatisfied with the type of bill denominations he received from Tyler, Brown asked her to give him different denominations. Tyler declined. Brown then indicated that he no longer wanted to purchase gas and asked for a refund or return of his $20 bill.

According to Brown, the response to his request by Tyler and Aldridge included the following: (1) "Naw Naw Naw"; (2) "No I'm not fina give you nothing back"; (3) "what is you tryna do?" (4) "He tryna do a money-switch";[2] (5) "we don't play that in here, unh, unh, Go! Go!" and (6) "Go pump your gas." Brown alleges that, at one point, Tyler said she was going to call the police. Brown was apparently eventually given back his $20, and as he left the store, he told the Mapco employees that he intended to call a manager the next day. Tyler allegedly then responded, "I don't care nothing 'bout you calling my manager, you don't come in here doing nothing like that."

Within days, Brown filed this lawsuit against Mapco in the Circuit Court of Shelby County, Tennessee. In the complaint, Brown stated that he is a licensed teacher who teaches in the Memphis City School System. The complaint alleges that the Mapco employees slandered and defamed Brown in the gas station incident, damaged his reputation, and caused him "severe emotional distress for which he has received professional medical[] help," and left him "depressed with great mental anguish." The complaint asserted claims based on (1) slander and defamation; (2) false light in the public eye; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) negligent hire; (6) negligent supervision; and (7) negligent retention. The complaint sought $575 million in compensatory damages and $900 million in punitive damages, for a total of $1.5 billion in damages.

Mapco filed an answer denying all claims. During the discovery that followed, Brown's deposition was taken.

---

[1]As we are reviewing a grant of summary judgment, we recite the facts as alleged by Brown.

[2]This statement was apparently made several times.

In March and June 2010, Brown filed two motions to amend his complaint to assert claims under Tennessee's Consumer Protection Act ("TCPA"). The trial court denied these motions.

The trial court entered a scheduling order that included deadlines for discovery depositions and for identifying expert witnesses. As of the deadline in the initial scheduling order, Brown had not deposed any Mapco witnesses or identified any expert witnesses.

Subsequently, Brown filed a motion for partial summary judgment, seeking summary judgment on his claims of false light, negligent infliction of emotional distress, and negligent supervision. Mapco then filed a cross-motion for summary judgment, seeking summary judgment on all of Brown's claims.

The trial court did not grant Brown's motion for partial summary judgment. It initially granted Mapco's motion for summary judgment as to some of Brown's claims, specifically, his claims based on libel, false light, intentional infliction of emotional distress, and negligent infliction of emotional distress. In the same order, the trial court gave Brown an extended deadline to identify witnesses or experts to support his claims of negligent hiring, supervision, and retention. Brown was also given additional time to conduct discovery on his slander claims.

Pursuant to the trial court's order, Brown deposed several witnesses, including the two Mapco employees involved in the incident. After that, Mapco renewed its motion for summary judgment as to the remaining claims based on slander and negligent hiring, supervision, and retention.

On August 26, 2011, the trial court granted summary judgment in favor of Mapco on all remaining claims. Brown now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Brown argues that the trial court erred in denying his motions to amend his complaint to assert consumer protection claims under the TCPA. He also contends that the trial court erred in granting summary judgment to Mapco on all of his claims. Finally, Brown argues that the trial court erred in denying his motion for summary judgment on his claims of slander, false light, and negligent infliction of emotional distress.

This Court has stated that "the grant or denial of a motion to amend is within the sound discretion of the trial court, and the court's action will be reversed only for an abuse of discretion." *Bellanti v. City of Memphis*, No. W2011-01917-COA-R3-CV, 2012 WL

1974220, at *3; 2012 Tenn. App. LEXIS 364, at *7-8 (Tenn. Ct. App. June 4, 2012) (citing ***Sallee v. Barrett***, 171 S.W.3d 822, 825-26 (Tenn. 2005); ***Doyle v. Frost***, 49 S.W.3d 853, 856 (Tenn. 2001)).  We have explained the abuse of discretion standard as follows:

> The abuse of discretion standard does not allow the appellate court to substitute its judgment for that of the trial court, ***Williams v. Baptist Mem'l Hosp.***, 193 S.W.3d 545, 551 (Tenn. 2006); ***Myint v. Allstate Ins. Co.***, 970 S.W.2d 920, 927 (Tenn. 1998), and we will find an abuse of discretion only if the court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party."

***Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011) (quoting ***Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.***, 249 S.W.3d 346, 358 (Tenn. 2008)); *see also **Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010).  Therefore, we will uphold the trial court's denial of a motion to amend "so long as reasonable minds can disagree as to the propriety of the decision made."  ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting ***State v. Scott***, 33 S.W.3d 746, 752 (Tenn. 2000); ***State v. Gilliand***, 22 S.W.3d 266, 273 (Tenn. 2000)).

We review a trial court's grant of summary judgment *de novo*, affording the trial court's decision no presumption of correctness.  ***Green v. Green***, 293 S.W.3d 493, 514 (Tenn. 2009); ***Eskin v. Bartee***, 262 S.W.3d 727, 732 (Tenn. 2008); ***BellSouth Adver. & Publ'g Co. v. Johnson***, 100 S.W.3d 202, 205 (Tenn. 2003); ***Staples v. CBL & Assocs.***, 15 S.W.3d 83, 88 (Tenn. 2000).  Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Tenn. R. Civ. P. 56.04; *see **Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 5 (Tenn. 2008); ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008).

Brown appeals the trial court's grant of Mapco's motion for summary judgment as well as its denial of his motion for partial summary judgment.  As to the grant of Mapco's motion for summary judgment, our Supreme Court has summarized the analysis on appeal as follows:

> The party seeking the summary judgment has the ultimate burden of persuading the court "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law."  ***Byrd [v. Hall]***, 847 S.W.2d [208,] 215 [(Tenn. 1993)].  If that motion is

properly supported, then the burden of production to establish a genuine issue of material fact shifts to the non-moving party. ***Hannan***, 270 S.W.3d at 5. In order to shift the burden of production, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the non-moving party cannot establish an essential element of his claim at trial. ***Id.*** at 8-9. The court must accept the facts presented by the nonmovant as true and resolve any doubts regarding the existence of genuine issue of material fact in the nonmovant's favor. ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008). At the summary judgment phase, "it is not the role of a trial or appellate court to weigh the evidence or substitute its judgment for that of the trier of fact." ***Id.*** at 87 (citing ***Byrd***, 847 S.W.2d at 211).

***Estate of French v. Stratford House***, 333 S.W.3d 546, 553-54 (Tenn. 2011).

This Court has described the analysis if the moving party has the ultimate burden of proof on the claim that is the subject of the summary judgment motion, here, Brown's motion for partial summary judgment on several of his claims. The standard where the movant bears the ultimate burden of proof is as follows:

> The burden-shifting analysis differs if the moving party bears the burden of proof at trial. "For example, a plaintiff who files a motion for partial summary judgment for an element of his or her claim shifts the burden by alleging undisputed facts that show the existence of that element and entitle the plaintiff to summary judgment as a matter of law." "Similarly, a defendant asserting an affirmative defense . . . shifts the burden of production by alleging undisputed facts that show the existence of the affirmative defense."

***Fortune v. UNUM Life Ins. Co. of Am.***, 360 S.W.3d 390, 395 (Tenn. Ct. App. 2010) (quoting ***Hannan***, 270 S.W.3d at 9 n.6) (internal citations omitted).

**ANALYSIS**

We first consider Brown's argument on his motions to amend the complaint, and then the arguments on summary judgment.

**Motion to Amend Complaint**

Brown argues first that the trial court erred in denying his motions to amend his complaint to include new claims under the TCPA. He points to Tyler's initial refusal to give him a

refund of his $20 bill and her allegedly slanderous statements as the basis for the claim. To explain why the claim was not included in the original complaint, Brown notes the fact that he did not have access to the Mapco surveillance video until after he filed his complaint. Brown contends that he should have been permitted to amend to assert a TCPA claim.

As noted above, our standard of review for a trial court's denial of a motion to amend is abuse of discretion. Among the factors that a trial court may consider with regard to a motion to amend are undue delay in filing the motion to amend and futility of the amendment sought by the movant. *Daniels v. Wray*, No. M2008-01781-COA-R3-CV, 2009 WL 1438247, at *2 (Tenn. Ct App. May 21, 2009) (citing *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979)).

In this case, Brown gives no reason for his delay in attempting to assert a claim under the TCPA, except that he "had the benefit" of having viewed the Mapco store surveillance video after he filed the original complaint. The video, however, gave Brown no new information pertinent to a TCPA claim, as he was a participant in the actual incident that was captured in the video.

Moreover, it is clear that permitting such an amendment would have been futile. Brown points to no unfair or deceptive act within the meaning of the TCPA. None of the words or actions by the Mapco clerks of which Brown complains can be seen as deceptive. Brown points to Tyler's initial refusal to refund his $20 bill, but he also admits that he ultimately received the refund. He cites no authority showing that the facts he alleges make out any plausible claim under the TCPA.

Under these circumstances, we find no abuse of discretion. The trial court's denial of Brown's motion to amend his complaint is affirmed.

### Grant of Mapco Summary Judgment Motion

Our review of the trial court's decision on Mapco's motion for summary judgment takes us on a tour of a variety of tort theories of recovery. Our itinerary includes: negligent hiring, supervision, and retention; intentional infliction of emotional distress; negligent infliction of emotional distress; false light in the public eye; and finally defamation. We now embark.

### *Negligent Hiring, Supervision, Retention*

Brown contends that the trial court erred in granting Mapco's motion for summary judgment as to his claim of negligent hiring, supervision, and retention of Mapco employee Tyler.

Brown argues that it was foreseeable to Mapco that "Tyler would injur[e] a consumer," that Mapco should have known that "Tyler was using profanity towards consumers," and that Mapco "acted recklessly in their supervision of . . . Tyler."

This Court has previously discussed the cause of action for negligent hiring, supervision, and retention:

> Tennessee courts recognize the negligence of an employer in the selection and retention of employees and independent contractors. A plaintiff in Tennessee may recover for negligent hiring, supervision or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job.

***Doe v. Catholic Bishop for Diocese of Memphis***, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008) (internal citations omitted).

Assuming *arguendo* that Brown can establish the elements of a claim for negligence, Brown does not even allege acts to support his conclusory assertion that Mapco knew or should have known that Tyler was, allegedly, unfit for her job. He points only to the alleged fact that Tyler at times did not greet customers when they walked into the store and that she was terminated from an earlier job for dozing off while on duty. These facts are irrelevant in the context of this case. Brown's hyperbole and conclusory statements do not take the place of alleging actual facts to support his claim that Mapco "had knowledge of the employee's unfitness for the job." ***Id.***

We find no error in the trial court's grant of summary judgment on these claims.

### *Intentional Infliction of Emotional Distress*

Brown also argues that the trial court erred in granting summary judgment to Mapco on his claim of intentional infliction of emotional distress. Acknowledging that a cause of action for intentional infliction of emotional distress must be premised on behavior that is extreme and outrageous, Brown contends that the conduct by Tyler of which he complains meets the standard for the tort. Brown also contends that his mental injury from the incident was so severe that he "sought medical help from two doctors."

"The elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." ***Rogers v. Louisville Land***

*Co.*, 367 S.W.3d 196, 205 (Tenn. 2012) (citations omitted). In *Weaver v. Pardue*, this Court observed: "A plaintiff's burden to demonstrate outrageous conduct 'is not an easy burden to meet.' " *Weaver v. Pardue*, No. M2010-00124-COA-R3-CV, 2010 WL 4272687, at *5 (Tenn. Ct. App. Oct. 28, 2010) (quoting *Oates v. Chattanooga Pub. Co.*, 205 S.W.3d 418, 428 (Tenn. Ct. App. 2006)). The *Weaver* Court explained:

> Liability for IIED [intentional infliction of emotional distress] " 'does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities.' " *Bain* [*v. Wells*], 936 S.W.2d [618,] 622 [(Tenn. 1998)] (quoting *Medlin* [*v. Allied Inv. Co.*], 398 S.W.2d [270,] 274 [(Tenn. 1966)]). The Tennessee Supreme Court, while recognizing that "no perfect legal standard exists for determining whether particular conduct is so intolerable as to be tortious," has endorsed the "high threshold" of the Restatement (Second) of Torts:
>
>> "The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'"
>
> *Bain,* 936 S.W.2d at 622-23 (quoting *Medlin,* 398 S.W.2d at 274 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). . . . "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." Restatement (Second) of Torts § 46 cmt. h (1965).

*Weaver*, 2010 WL 4272687, at *5 (citations within Restatement omitted). Cognizant of this standard, Brown argues that "the average member of the community would yell 'Outrageous'

at Mary Tyler's/Mapco's conduct of accusing [Brown] of doing a 'Money-Switch' and threatening to call the police on [Brown] simply because [he] respectfully asked for a refund."

We think not. The conduct on which Brown bases his lawsuit falls squarely within the realm of "mere insults, indignities, threats, annoyances, petty oppression or other trivialities."[3] **Bain**, 936 S.W.2d at 622. We find no error in the trial court's grant of summary judgment to Mapco on this claim.

### *Negligent Infliction of Emotional Distress*

Brown also contends that the trial court erred in granting summary judgment to Mapco on his claim of negligent infliction of emotional distress. He argues that the elements of the tort are met and equates the severity of his mental and emotional injury in this case to the injuries of the plaintiff in **Camper v. Minor**, 915 S.W.2d 437 (Tenn. 1996) (trucker involved in vehicular accident suffered emotional distress after seeing mangled remains of teenage victim in other vehicle) and the plaintiff in **Estate of Amos v. Vanderbilt Univ**., 62 S.W.3d 133 (Tenn. 2001) (hospital inadvertently infected patient with HIV virus, patient then unwittingly infected daughter with HIV during childbirth).

In **Rogers v. Louisville Land Co.**, 367 S.W.3d 196 (Tenn. 2012), our Supreme Court outlined the elements of the tort of negligent infliction of emotional distress and compared it to intentional infliction of emotional distress:

> The elements of a claim for negligent infliction of emotional distress include the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation. In addition, the plaintiff must prove that the defendant's conduct caused a serious or severe emotional injury. Thus, both actions for intentional infliction of emotional distress and negligent infliction of emotional distress . . . require an identical element: a showing that the plaintiff suffered a serious mental injury resulting from the defendant's conduct.

---

[3]We note that Brown makes no allegation that he was particularly vulnerable to injury through mental distress at conduct such as this, or that the Mapco employees were aware of any special vulnerability that he had. Indeed, Brown points out repeatedly that the Mapco employees did not know him at all. *See* W. Page Keeton, *Prosser and Keeton on Torts* § 12, p. 62 (5th ed. 1984) ("[A]nother basis on which extreme outrage can be found is the defendant's knowledge that the plaintiff is especially sensitive, susceptible and vulnerable to injury through mental distress at the particular conduct.") ( using the example of a prank played on an eccentric and mentally deficient elderly person).

*Rogers*, 367 S.W.3d at 206 (internal citations and footnotes omitted).  The *Rogers* Court discussed the requirement of a serious mental injury, quoting at length from oft-cited Section 46 of the Restatement (Second) of Torts:

> The reason for the rule imposing liability only when extreme and outrageous conduct causes serious or severe emotional distress is apparent – to avoid the judicial system being flooded with potentially fraudulent, manufactured or overstated claims arising from the "transient and trivial" emotional distresses of daily life, recognizing that "[i]f the plaintiff is to recover every time that [his or] her feelings are hurt, we should all be in court twice a week."

*Rogers*, 367 S.W.3d at 209 (quoting Russell Fraker, Note, *Reformulating Outrage: A Critical Analysis of the Problematic Tort of IIED*, 61 Vand. L. Rev. 983, 988 (2008) (quoting William L. Prosser, *Intentional Infliction of Mental Suffering: A New Tort*, 37 Mich. L. Rev. 874, 877 (1939))).

In the quest to limit claimants' recovery to claims of emotional distress that are both real and substantial, the *Rogers* Court repeatedly noted that the plaintiff's injury is more likely to be deemed sufficiently severe if the conduct that caused the injury is extreme and outrageous. *Id.* at 208 ("[T]he flagrant and outrageous nature of the defendant's conduct . . . adds weight to a plaintiff's claim and affords more assurance that the claim is serious.") (quoting *Miller v. Willbanks*, 8 S.W.3d 607, 613 (Tenn. 1999)); *see also Rogers*, 367 S.W.3d at 208 ("The 'extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed.' ") (quoting Restatement (Second) of Torts § 45 cmt. j.).

In addition, the *Rogers* Court restated a standard for the plaintiff's emotional injury that includes a "reasonable person" component, concluding: "[A] serious or severe mental injury occurs 'where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case' . . . . " *Id.* at 210 (referring to listed factors on how to interpret the standard).  The *Rogers* Court cited the Restatement (Third) of Torts: Liability for Physical and Emotional Harm (Tentative Draft No. 5, 2007), which explains how to apply the "reasonable person" component of the standard for a recoverable emotional injury:

> [T]his Section applies only when the person seeking recovery has suffered serious emotional disturbance.  In addition, the stimulus must be one that would cause reasonable persons to suffer serious emotional disturbance. Thus, there is a subjective and objective component to this requirement.  An

> unusually susceptible person may not recover if an ordinary person would not have suffered serious emotional disturbance.

Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 46 cmt. i (Tentative Draft No. 5, 2007); *Rogers*, 367 S.W.3d at 209. The Restatement (Third) of Torts cites the Tennessee case of *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996) as among the "[m]odern cases requiring that the stimulus be sufficient to cause serious emotional disturbance to a reasonable person . . . ." Restatement (Third) of Torts § 46 (Reporters' Note to cmt. i).

Thus, in the elements that must be established for a claim of negligent infliction of emotional distress, the requirement that the stimulus conduct be extreme and outrageous is interwoven with the "reasonable person" component of the element of serious or severe emotional injury. In effect, the plaintiff must prove that the conduct giving rise to his claim was so extreme and outrageous that it would have caused a reasonable person to suffer serious or severe emotional injury.

We apply this standard to the case at bar. Brown insists that he, in fact, experienced severe emotional injury from the incident at Mapco, serious enough that he consulted medical professionals and substantial enough to support his claim for damages in excess of a billion dollars. For purposes of our analysis, we assume the truth of this assertion. We must conclude, however, that the "reasonable person" component of the emotional injury element of the tort has not been met in this case. We have already concluded that the conduct by the Mapco employees of which Brown complains does not rise to the level of "outrageous" but is more appropriately categorized as "mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Bain*, 936 S.W.2d at 627. Concomitantly, we also conclude, as a matter of law, that the Mapco employees' conduct would not cause a reasonable person to suffer serious or severe mental injury; a reasonable person in Brown's circumstance would shrug off the incident as an "annoyance" or "petty oppression" and go about his business. Accordingly, we find no error in the trial court's grant of summary judgment to Mapco on this claim.

### False Light in the Public Eye

Brown contends that the trial court also erred in dismissing his claim based on false light invasion of privacy, also called "false light in the public eye." *See* W. Page Keeton, *Prosser and Keeton on Torts* § 117, p. 863 (5th ed. 1984). He argues that even if Tyler's statements to the effect that Brown was "tryna do a money-switch" and her threats to call the police were not defamatory, they were sufficient to support a false light claim. He also argues that

the fact that the statements were made in the presence of "several customers coming and going in the Mapco store" satisfies the "publicity" requirement for such a claim.

In ***West v. Media General Convergence, Inc.***, 53 S.W.3d 640 (Tenn. 2001), the Tennessee Supreme Court held that Tennessee recognizes false light in the public eye, *i.e.*, false light invasion of privacy, as an actionable tort. ***Id.*** at 645. The ***West*** Court adopted the definition of false light set forth in Section 652E of the Restatement (Second) of Torts:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if:
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

***West***, 53 S.W.3d at 643-44 (quoting Restatement (Second) of Torts § 652E (1977)).

In a recent case, this Court elaborated on the meaning of the term "publicity" as used in the context of a false light claim:

> What is meant by the term "publicity" used in Section 652E? Comment *a* to Section 652E of the RESTATEMENT (SECOND) OF TORTS refers back to Comment *a* to Section 652D, which states:
>
>> "Publicity," as it is used in this Section, differs from "publication," as that term is used in § 577 in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.

Thus it is not an invasion of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

***Secured Fin. Solutions, LLC v. Winer***, No. M2009-00885-COA-R3-CV, 2010 WL 334644, at \*4 (Tenn. Ct. App. Jan. 28, 2010), *perm. app. den.* (Aug. 25, 2010). In ***Winer***, the plaintiffs' false light claim against the defendant was based on an email to a business associate and an oral statement to another business associate, both of which allegedly implied that the plaintiffs' business was being shut down by regulators. ***Id.*** at \*1. The Court upheld the trial court's grant of summary judgment on the plaintiffs' false light claim. ***Id.*** at \*4. Because statements or disclosure to one person or a small group of persons is not sufficient, the Court held that the defendant's "communication fails, as a matter of law, to satisfy the 'publicity' requirement of the tort of false light invasion of privacy." ***Id. See also*** 1 Rights of Publicity and Privacy § 5:114 (2d ed.) (updated March 2012) ("Thus, in a false light case, plaintiff must plead and prove that the matter was 'widely publicized . . . . [and] '[d]isclosure to just a few persons is not sufficient.' " [4]

Likewise, in this case, it is undisputed that the statements at issue by the Mapco employees were made, at most, in the presence of "several" unidentified customers who came in and out of the store during the incident. As a matter of law, this is not sufficient to meet the "publicity" requirement for a claim of false light in the public eye. The trial court's grant of summary judgment on this claim is affirmed.

### *Defamation*

Finally, Brown argues that the trial court erred in granting summary judgment to Mapco on his claim of slander. In arguing that the remarks of the Mapco employees were defamatory, Brown focuses on Aldridge's exclamation, "What is you trying to do?!" He also emphasizes Tyler's statements "we don't play that" and "he tryna do a money-switch" and her threat to call the police, arguing that Tyler was accusing him of engaging in unspecified criminal activity. Brown contends that these words injured his reputation as a "law-abiding citizen" and his "image in relation to his 'profession' which is teaching and trying to be a good role-model within the inner-city."

---

[4] ***But see*** 62A Am. Jur.2d Privacy § 141 (stating that the publicity requirement for a false light claim "may be satisfied by establishing that the false and highly offensive information was disclosed to a person or persons with whom a plaintiff has a special relationship"). As the customers in the Mapco store were never identified, Brown had no relationship with them, so we need not address this exception.

Brown contends that the requirement that the defendant "published" the defamatory statement has been met in his case because the remarks of the Mapco employees were made in a store that was open to the public. He points out that several unidentified customers walked in and out of the Mapco store during his conversation with the two Mapco employees. Brown's complaint emphasizes one customer in particular: "There was one beautiful young lady in line behind Mr. Brown when [the incident] first started and heard everything. Mr. Brown was planning on trying to start a conversation with the young lady because she looked somewhat familiar. [Mapco employee Tyler] changed everything." Brown emphasizes the same unidentified customer in his appellate brief, asserting that he "wanted to be friends with her."[5]

Defamation is comprised of the "twin torts" of libel and slander: "A libel action involves written defamation and a slander action involves spoken defamation." W. Page Keeton, *Prosser and Keeton on Torts* § 111, p. 771 (5th ed. 1984); ***Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.***, 876 S.W.2d 818, 820 (Tenn. 1994). To establish a claim for defamation, "the plaintiff must establish that: (1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." ***Sullivan v. Baptist Mem. Hosp.***, 995 S.W.2d 569, 571 (Tenn. 1999). ***See also Kersey v. Wilson***, No. M2005-02106-COA-R3-CV, 2006 WL 3952899, at *3 (Tenn. Ct. App. Dec. 29, 2006), *perm. app. den.* (Tenn. Apr. 16, 2007 and Apr. 23, 2007), *cert. den.*, 128 S.Ct. 285, 169 L.Ed.2d 150 (2007).

For the defendant to be liable for defamation, "there must be publication of matter that is both defamatory and false." W. Page Keeton, *Prosser and Keeton on Torts* § 116, p. 839. Thus, it is not enough for the statement in question to be false; the plaintiff must show that the defendant made a false statement that defamed him. ***See Farmer v. Hersh***, No. W2006-01937-COA-R3-CV, 2007 WL 2264435, at *5 (Tenn. Ct. App. Aug. 9, 2007). "[T]he basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation." ***Davis v. The Tennessean***, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001). This Court has adopted Prosser's description of a statement that is defamatory:

> For a communication to be libelous, it must constitute a serious threat to the plaintiff's reputation. A libel does not occur simply because the subject of a publication finds the publication annoying, offensive or embarrassing. The words must reasonably be construable as holding the plaintiff up to public

---

[5]Tennessee does not recognize a claim for loss of "friendship" opportunity.

hatred, contempt or ridicule. They must carry with them an element "of disgrace."

*Kersey*, 2006 WL 3952899, at \*3 (quoting **Stones River Motors, Inc. v. Mid-South Pub. Co.**, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983)) (quoting W. Prosser, *Law of Torts* § 111, p. 739 (4th ed. 1971)).

The issue of whether a communication is capable of conveying a defamatory meaning is a question of law for the court to decide in the first instance; it is then for the jury to decide whether the communication was in fact so understood by those who received it. *Zius v. Shelton*, No. E1999-01157-COA-R9-CV, 2000 WL 739466, at \*2 (Tenn. Ct. App. June 6, 2000); *Prosser and Keeton on Torts* § 111, p. 781 (5th ed. 1984). To make this determination, courts "must look to the words themselves and are not bound by the plaintiff's interpretation of them." *Stones River*, 651 S.W.2d at 719.

With these parameters in mind, we look at the statements to which Brown objects. Many of the statements by Mapco employees Aldridge and Tyler are clearly neither false nor defamatory. Statements such as "naw naw naw," and "we don't play that" and "go pump your gas" and "what is you tryna do" may have been rude or annoying, but they are neither false nor defamatory. Mapco employee Tyler's threat to call the police does not describe Brown, falsely or otherwise; it is a threat to take action that, while disagreeable, is not defamation.

Brown focuses especially on Tyler's statement: "he tryna do a money switch." He characterizes it as an accusation of unspecified "criminal activity" that damaged his reputation. In evaluating the alleged defamatory statement, it is appropriate for the Court to "parse[] the language of the defendants' statement very closely" and consider the factual circumstances. *Kersey*, 2006 WL 3952899, at \*5. In this case, according to Brown, when he gave Tyler a $20 bill to pay for $5 in gas, Tyler gave him $15 back in denominations of one-dollar bills and a five-dollar bill. Brown says he then told Tyler, "I wanted a ten. I will give you a five. I got five dollars, I needed a ten." After Tyler refused, Brown asked for his money back. The Mapco employees responded with the statements in question, including "he tryna do a money-switch."

Under the circumstances, Tyler's statement is literally true. Brown received his change in denominations that he did not prefer, and he asked Tyler to "switch" the money he'd been given for different denominations. After she declined, he asked to "switch" back to his original $20 bill. Thus, Tyler's statement was true. Moreover, at most, Tyler's words are "annoying, offensive or embarrassing." They do not hold Brown "up to public hatred,

contempt or ridicule." **Stones River**, 651 S.W.2d at 719. Accordingly, as a matter of law, we hold that the statements on which Brown bases his claim were neither false nor defamatory.

We note that, in light of the fact that all of the customers who wandered in and out of the store are unidentified, the elements of publication and damage to reputation are likely not met as well. **See, e.g.**, *Prosser and Keeton on Torts* § 112, p. 798 ("It is not enough that the words are uttered in the presence of others unless they are in fact overheard"); **Bell v. Slepakoff**, 224 A.D.2d 567, 568-69; 639 N.Y.S.2d 406, 407 (N.Y. App. Div. 1996) ("It is well established that the identity of third persons to whom the allegedly defamatory statements were made or read must be pleaded with specificity."). However, in light of our holding that the statements at issue do not rise to the level of defamation, we need not address these issues. The trial court's grant of summary judgment to Mapco on Brown's slander claim is affirmed.

## CONCLUSION

We affirm the trial court's denial of Brown's motions to amend the complaint to allege a TCPA claim, finding no abuse of discretion. We affirm the trial court's grant of Mapco's motion for summary judgment on all of Brown's claims. This holding obviates the need for us to address the trial court's denial of Brown's motion for partial summary judgment on several of his claims. All other issues raised on appeal are pretermitted.

The decision of the trial court is affirmed. Costs of this appeal are assessed against Appellant Kim Brown and his surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE