IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 21, 2024 Session

## RICHARD H. NIEHAUS ET AL. v. DARNELL WADE HOUFEK ET AL.

**Appeal from the Chancery Court for Dickson County**
**No. 2020-CV-90     David D. Wolfe, Judge**

_____

### No. M2023-00992-COA-R3-CV

_____

This appeal, arising from a land dispute, concerns the trial court's dismissal of several claims against multiple parties pursuant to motions to dismiss filed under Rule 12.02(6) of the Tennessee Rules of Civil Procedure. Although the terms of an "Agreed Final Order" reflected that the Appellants waived their right to appeal any issue regarding two of the parties in this case, the same order also signaled that nothing prevented the Appellants from appealing matters involving two other individual parties. Through the present appeal, the Appellants challenge the dismissal of their claims against these other individual parties. Although we largely affirm the trial court's dismissal order, we reverse in part. Specifically, we hold that, on account of certain allegations that were pled pertaining to the cutting of trees on the Appellants' property, the wholesale dismissal of one of the individual parties was improper.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
in Part, Reversed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG and KRISTI DAVIS, JJ., joined.

Douglas Thompson Bates, IV, Centerville, Tennessee, for the appellants, Darnell Wade Houfek and Robin Seal Kimbro (Houfek).

Russell W. Lewis, Nashville, Tennessee, for the appellee, Brandon Stoner.[1]

_____

[1] Mr. Stoner is the only Appellee who has filed a brief in connection with this appeal. Pursuant to a per curiam order filed on December 13, 2023, this Court ordered that the appeal be submitted for a decision without a brief on behalf of the other Appellees.

## MEMORANDUM OPINION[2]

## BACKGROUND

This case arises out of a land dispute in Dickson County. Litigation originally commenced when Richard Niehaus and Martha Niehaus filed a petition in the Dickson County Chancery Court ("the trial court") against Darnell Houfek and Robin Kimbro (collectively, "the Houfeks").[3] The Houfeks, the petition noted, were the owners of a neighboring tract of land, and the Niehauses asserted that a dispute existed regarding an easement that went through the Houfeks' property for the benefit of their own. As described by the Niehauses' petition, this easement consists of an "undeveloped dirt path upon which the [Niehauses] traverse though the [Houfeks'] Property to access the [Niehauses'] Property . . . ." Mr. Houfek had allegedly made numerous threats regarding the use of the easement, and in light of his alleged acts of "interference and obstructionism," the Niehauses claimed that they had been forced to continue residing in Davidson County rather than on their own property in Dickson County. Among other things, the Niehauses sought to have the Houfeks enjoined from interfering with ingress or egress through the easement.

The Houfeks filed an answer wherein they prayed that the trial court would deny relief to the Niehauses, but as is relevant to the present appeal, they also asserted claims of their own. In addition to pointing to actions allegedly taken by the Niehauses, the Houfeks named Michael Bresson, Brandon Stoner, and Music City Tactical Shooters as additional parties. According to the Houfeks, Mr. Bresson was the owner of Music City Tactical Shooters, a shooting club, and Mr. Stoner was his shooting teammate. Allegedly, prior to the Niehauses' acquisition of their Dickson County property, Mr. Bresson had attempted to purchase the land "with the condition that it get rezoned for the shooting club." Although the zoning request was denied, the Houfeks alleged that Music City Tactical Shooters had nonetheless been building a gun range on the Niehaus property subsequent to the Niehauses' acquisition of the land in 2019. In addition to seeking certain injunctive relief, the Houfeks ultimately alleged that a number of specific torts had been committed against them and generally asserted that "Niehaus, Stoner, Bresson and MCTS formed a

---

[2] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[3] Although Ms. Kimbro lists her surname as "Houfek" on certain filings in connection with this litigation, she lists her surname as "Kimbro" on the cover page of her principal appellate brief. We collectively refer to Mr. Houfek and Ms. Kimbro as "the Houfeks" for ease of reference herein.

civil conspiracy." Among their various assertions, the Houfeks chronicled a series of alleged shootings that had occurred on the Niehaus property and also outlined alleged instances of interference with trees on their land and alleged occasions where false reports to authorities had been made.

On December 7, 2021, the trial court entered its "Order on Motion to Dismiss," stating that motions to dismiss under Rule 12.02 of the Tennessee Rules of Civil Procedure had been filed by the Niehauses, Mr. Bresson, Music City Tactical Shooters, and Mr. Stoner. Although certain matters in the broader case were not addressed pursuant to this order, the trial court's order did specifically hold that the allegations pertaining to an alleged conspiracy were insufficient. In pertinent part, the order concluded that the Houfeks' allegations were "conclusory," and further, the order held that the Houfeks had, through their pleading, failed to establish an underlying tort.

Although a final evidentiary hearing regarding outstanding issues in the case was set for June 21, 2023, an "Agreed Final Order" was entered on June 8, 2023, upon the agreement of the Niehauses and the Houfeks. Among other things, the June 8, 2023, order directed the Houfeks to remove all objects that were within the easement and stated that the Niehauses "shall be allowed to use their property as conforming to all applicable zoning ordinances, state laws and regulations." Of note to our present review, although the order reflected that both the Niehauses and the Houfeks "waive[d] their right to appeal this order or any issue between them," it specifically clarified that "[n]othing herein waives the Houfek[s'] right to appeal trial court orders against Michael Bresson and/or Brandon Stoner." The present appeal followed.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12.02(6) of the Tennessee Rules of Civil Procedure seeks to determine whether the pleadings state a claim upon which relief can be granted. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). Although great specificity in pleadings is ordinarily not required to survive a motion to dismiss, *id.*, conspiracy claims "must be pled with some degree of specificity." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006).

A Rule 12.02(6) motion to dismiss challenges only the legal sufficiency of the complaint, and our review of a trial court's determinations on issues of law is de novo with no presumption of correctness. *In re Estate of Starkey*, 556 S.W.3d 811, 814-15 (Tenn. Ct. App. 2018).

## DISCUSSION

Much of this case has already been resolved. As noted earlier, the Houfeks waived their right to appeal any issue between them and the Niehauses. Through the present appeal, however, the Houfeks appeal the dismissal of their claims against Mr. Bresson and

Mr. Stoner. Specifically at issue are four alleged torts and allegations that a civil conspiracy existed.

We begin our discussion by considering the Houfeks' contention that they validly asserted a claim for nuisance in this case. In focusing on this question in the context of the present appeal, we of course specifically limit our attention to whether a valid nuisance claim against *Mr. Bresson* or *Mr. Stoner* was established by the Houfeks' allegations.

As we understand it, the claimed nuisance here relates to the alleged discharge of guns on the Niehaus property. Having reviewed the Houfeks' allegations, we agree with the trial court's effective conclusion that a claim for nuisance was not properly stated against Mr. Bresson or Mr. Stoner. No doubt, there are allegations pertaining to certain incidents of gunfire occurring on the Niehaus property, but very simply, there is nothing alleging that either Mr. Bresson or Mr. Stoner were actual shooter participants in the complained-of events.[4] To the extent that the Houfeks may believe that they had an actionable nuisance claim against the Niehauses as a result of the gunfire that was alleged, that matter is not before us. Again, the Houfeks waived their right to appeal the dismissal of their tort claims against the Niehauses.

We next consider the Houfeks' assertion of a conversion claim and their attempt to recover for the alleged cutting of trees on their property. A conversion "is the appropriation of the thing to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right." *Barger v. Webb*, 391 S.W.2d 664, 665 (Tenn. 1965). Tennessee law provides for recovery in instances where trees are improperly cut from the property of another, *see Neidhardt v. Shouse*, No. 1:15-cv-00088, 2017 WL 2957874, at *1 (M.D. Tenn. July 11, 2017) (discussing how Tennessee law provides for an award of damages for the value of trees), and here, in an apparent attempt to explain why Mr. Stoner should be liable with respect to one of the occasions when trees were allegedly cut, the Houfeks argue in their brief that the trees had been "cut down by a company it was posited . . . was 'very likely' owned by Appellee Stoner." In our view, although this is insufficient to implicate Mr. Stoner, we do agree with the Houfeks that valid allegations supporting liability for the cutting of trees were pled in this case. Namely, as to Mr. Bresson, it is clear that paragraph seventy-six of the Houfeks' complaint outlines the basis for a valid claim against him.[5] Per that paragraph, the Houfeks allege as follows:

---

[4] Nor does the argument section of the Houfeks' brief itself endeavor to, in compliance with applicable briefing requirements, establish otherwise. Indeed, the argument section of the Houfeks' brief that is devoted to a nuisance claim does not appear to cite to any allegations from any pleading. Of further note, following argument by Mr. Stoner in his appellate brief that none of the allegations in this case implicated his participation in any shooting, the Houfeks conceded in their reply brief that they made a mistake in indicating Mr. Stoner was physically present at certain shootings.

[5] In the trial court, in their "Appendix 1 Consolidated Response to Respondents['] Motion to Dismiss," the Houfeks specially invoked this paragraph as support for their claim against Mr. Bresson. They have also cited to this paragraph on appeal.

Once again, on April 15, 2020, Houfek's property is damaged, as trees are cut down, and others that line the easement are spray painted orange. Houfek informs those working, including Bresson and Niehaus, that the trees they are cutting are on his property. The work continues, despite the known information.

In light of our conclusion that a valid claim against Mr. Bresson has been asserted regarding his alleged cutting of trees, his wholesale dismissal from this lawsuit by the trial court is hereby reversed. On remand, the Houfeks may pursue relief against him for his alleged cutting of their trees.

We next turn to the Houfeks' assertion of a claim for intentional infliction of emotional distress ("IIED claim"). "The elements of an [IIED claim] are that 'the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff.'" *Lemon v. Williamson Cnty. Schs.*, 618 S.W.3d 1, 21 (Tenn. 2021) (quoting *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012)).

In their brief, the Houfeks argue that they asserted a proper IIED claim against Mr. Stoner as a result of allegations they pled pertaining to a confrontation between Mr. Houfek and Mr. Stoner in January 2020. According to the Houfeks' pleading, Mr. Stoner called police dispatch "stating that Darnell Houfek would not let him on the property" and "told the officers—without any evidence—that he thought Houfek had a gun, and that Houfek told him that he had a gun." Mr. Houfek was allegedly handcuffed as a result of the report when law enforcement arrived, causing him emotional distress. Moreover, the Houfeks claim that Mr. Stoner's report was false.

On appeal, in support of the trial court's dismissal of the IIED claim, Mr. Stoner argues that these allegations against him are insufficient. Specifically, he contends that the factual allegations pled by the Houfeks do not support either the second or third elements that comprise a valid IIED claim. As for the alleged insufficiency of the Houfeks' allegations in relation to the second element of an IIED claim, Mr. Stoner maintains that the allegations against him "do not demonstrate outrageous conduct as they do not rise to the high standard of outrageousness necessary to sustain a claim." As discussed below, we agree.[6]

As the Tennessee Supreme Court has explained:

**The burden for a plaintiff to demonstrate outrageous conduct is a**

---

[6] Given our agreement on that matter, we need not specifically entertain the merits of Mr. Stoner's argument pertaining to the alleged insufficiency of the Houfeks' allegations vis-à-vis the third element of an IIED claim.

- 5 -

**high burden indeed**. Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (quoting *Medlin v. Allied Inv. Co.*, 217 Tenn. 469, 398 S.W.2d 270, 274 (1966), *abrogated on other grounds by Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996)). This Court has endorsed the "high threshold" standard stated in the Restatement (Second) of Torts:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. **It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress**, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. **Liability has been found only where the conduct has been <u>so outrageous in character</u>, and <u>so extreme in degree</u>, as to <u>go beyond all bounds of decency</u>, and to be regarded as atrocious and <u>utterly intolerable in a civilized community</u>. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."**

*Bain*, 936 S.W.2d at 622–23 (quoting *Medlin*, 398 S.W.2d at 274; Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)). The Restatement recognizes that "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." Restatement (Second) of Torts § 46 cmt. h; *see Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 704 (Tenn. Ct. App. 2012).

*Id.* (emphases added).

Here, we do not regard the single alleged instance of Mr. Stoner making a false police report to satisfy the "exacting standard" that accompanies IIED claims. *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999) (noting that the plaintiff's burden to prove that the offending conduct was outrageous is an "exacting standard").[7] In our view, the alleged

---

[7] Although of course not controlling of our own review, we observe that similar conclusions have been reached by other courts. Of note, the Supreme Court of Minnesota discussed as follows in reference to alleged false reports to police:

> Extreme and outrageous conduct is conduct that is "utterly intolerable to the

conduct does not "go beyond all bounds of decency."

The remaining tort at issue is for a form of invasion of privacy, namely that of intrusion upon seclusion. In discussing the contours of this tort, our past jurisprudence has quoted to the Restatement (Second) of Torts § 652B, which reads as follows:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977). Per one of the comments to section 652B, comment (d), the interference with the plaintiff's seclusion must be "substantial."

As argued in their brief, the Houfeks' invasion of privacy theory of liability is predicated, in part, on Mr. Stoner's January 2020 call to police dispatch. However, of note, in referencing that alleged conduct, as well as a couple of instances where "Niehaus" supposedly called the police, the Houfeks submit that "the repeated acts of calling the police by Mr. Niehaus and Stoner amounted to an invasion of privacy." As to this broader principal argument, which is notably positioned as being predicated upon the repetition of calls to police dispatch, we state again that this case has already been resolved as it concerns the Niehauses.

As for Mr. Stoner, he aptly notes in his brief that, as it concerns him, the invasion of privacy claim rests solely upon the alleged false report he made in January 2020. Although the Houfeks' pleading avers that Mr. Stoner acted "in an attempt to harass," we do not regard this single episode of conduct, as alleged, as sufficiently stating a claim for intrusion upon seclusion.

---

civilized community." *Hubbard,* 330 N.W.2d at 439 (citation omitted). To prevent fictitious and speculative claims we limit this tort "to cases involving particularly egregious facts." *Id.* Langeslag reported to the police that Eddy was scalping tickets, and that Eddy would not allow her to leave his office. Even assuming these reports were false and Langeslag knew it, this conduct does not rise to the level of outrage that is "utterly intolerable to the civilized community." *Id.* Our conclusion is buttressed by decisions in other jurisdictions reaching similar conclusions. *Fuller v. Local Union No. 106,* 567 N.W.2d 419, 423 (Iowa 1997) (concluding that the defendant did not engage in extreme and outrageous conduct when he falsely reported to the police that the plaintiff was driving while intoxicated); *Holland v. Sebunya,* 759 A.2d 205, 212 (Me. 2000) (stating that calling the police and having the plaintiff physically removed from a meeting does not constitute extreme and outrageous behavior, even if the removal was not warranted).

*Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 866 (Minn. 2003).

Having addressed the individual torts pursued by the Houfeks, we now address their pursuit of recovery under a conspiracy theory of liability.

"An actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med*, 71 S.W.3d at 703; *see also Law Offices of T. Robert Hill PC v. Cobb*, No. W2020-01380-COA-R3-CV, 2021 WL 2172981, at *5 (Tenn. Ct. App. May 27, 2021) (noting that a conspiracy exists when there is "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury"). "Upon a finding of conspiracy, each conspirator is liable for the damages resulting from the wrongful acts of all co-conspirators in carrying out the common scheme." *Trau-Med*, 71 S.W.3d at 703.

Here, the trial court regarded the allegations pled regarding a supposed conspiracy to be "conclusory," and on appeal, Mr. Stoner has urged this Court to affirm, arguing that the Houfeks failed to include sufficient allegations regarding an intent shared by the alleged co-conspirators. Although the Houfeks have attempted to challenge the dismissal of their conspiracy theory of liability by arguing that every Defendant had a "common motive," their offered briefing on this subject is, respectfully, unavailing. Namely, we note that, whereas the Houfeks' argument on this matter points to respective allegations purportedly pertaining to Mr. Bresson and Mr. Stoner immediately following a generalized statement that there was a "common motive" in this case, the cited allegations offered concerning Mr. Bresson do not in fact implicate him at all.[8]

In closing, we briefly address an issue raised regarding appellate attorney's fees. Whereas Mr. Stoner has specifically requested attorney's fees for this appeal pursuant to the authority in Tennessee Code Annotated section 27-1-122, we respectfully decline to grant Mr. Stoner such relief in this appeal.

## CONCLUSION

In light of the foregoing discussion, the trial court's dismissal order is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this Opinion.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE

---

[8] Instead, the referenced portion of the pleading mentions "Niehaus."