IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 5, 2018 Session

## THOMAS NATHAN LOFTIS, SR. v. RANDY RAYBURN

**Appeal from the Circuit Court for Davidson County**
**No. 17C-295      Kelvin D. Jones, Judge**

_____

### No. M2017-01502-COA-R3-CV

_____

The former director of a culinary program filed a complaint alleging defamation by implication or innuendo and false light invasion of privacy against an individual he claimed was the source of statements made in a newspaper article. The defendant moved to dismiss the complaint on the basis that the statements were not actionable as a matter of law. The trial court dismissed the complaint, and the former director appealed. We affirm the trial court's judgment dismissing the complaint and remand the issue of attorney's fees to the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

William Gary Blackburn and Bryant Beatty Kroll, Nashville, Tennessee, for the appellant, Thomas Nathan Loftis, Sr.

Daniel Alexander Horwitz and Alan Mark Sowell, Nashville, Tennessee, for the appellee, Randy Rayburn.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

An article was published in *The Tennessean* on March 2, 2016, that was titled, "Tennessee Flavors offers way to eat, drink, aid cooking arts." Jim Myers was the author, and he wrote about Tennessee Flavors, which he described as "a food and drink throwdown with more than 75 vendors from across Middle Tennessee" that served as

"the big kahuna fundraiser that benefits the culinary arts program of Nashville State Community College." The relevant portions of the article include the following:

I've written before about the dearth of qualified line cooks in town, from our best restaurants to the hotels and convention centers that need to feed the burgeoning throngs. If you're willing to work hard, love food and cooking and want a stable job, every kitchen door in Nashville will fling open.

[Randy] Rayburn recognized this need every day in his kitchens at the old Sunset Grill, Midtown Cafe and Cabana, so he decided to do something about it by dedicating himself to helping build the culinary arts program at what used to be called Nashville Tech.

To honor him, the school named its new facility at the old Hickory Hollow mall in Antioch The Randy Rayburn School of Culinary Arts (http://www.nscc.edu/programs/c/business-and-applied-arts/culinary-arts/) at Nashville State Community College. However, Rayburn will tell you it hasn't been easy. When he enlisted the help of local restaurateurs and chefs to offer feedback on the program and the quality of its graduates, the reports he got back weren't flattering. The program was simply turning out unqualified students.

Rayburn didn't flinch because a career of running successful restaurants teaches you how to cut losses and move on quickly. With his name on the building, he rolled up his sleeves and decided to get more involved. He went back to his dissatisfied cadre of chefs, including OGC (original gangsta Chef) Deb Paquette of Etch, City House's Tandy Wilson, Kim Totzka of the Turnip Truck, Edgar Pendley from Urban Grub, barbecue honcho Pat Martin, John Stephenson of the Family Wash and Max Knoepfel, executive chef of the Music City Center, and asked for more help.

They started by cleaning house from the top by removing director Tom Loftis. It was a politically inexpedient move last year since Loftis was the brother-in-law of Bill Freeman who was running for mayor at the time. If the election had gone a different way, it might have affected funding for the school.

Rayburn's group knew they needed fresh blood and launched a nationwide search, eventually hiring Paul Brennen over more than 50 other candidates.

Today, the ship seems to be righted and on a good course. There's scholarship money galore for young, and older, students interested in the culinary arts, and the new facility is a showplace.

The plaintiff Thomas Nathan Loftis, Sr., is the "Tom Loftis" referenced in Mr. Myers' article. Mr. Loftis filed a complaint against Randy Rayburn on February 3, 2017, asserting that Mr. Rayburn was liable to him for false light invasion of privacy and defamation by implication or innuendo. Mr. Rayburn filed a motion to dismiss the complaint on February 24, and Mr. Loftis responded by moving to file an amended complaint, which the trial court allowed. In his amended complaint, Mr. Loftis alleged that the information in the article came from Mr. Rayburn and constituted his spoken words. Mr. Loftis claimed that Mr. Rayburn's "words of self-aggrandizement portray Rayburn as the savior of culinary arts from the incompetence of Plaintiff." Mr. Loftis asserted that Mr. Rayburn's "boastful and unseemly comments were reckless and made with a conscience [sic] indifference to the truth." He further asserted that Mr. Rayburn "intentionally and recklessly impugned the competence and maligned the reputation of the Plaintiff in order to embellish his own role in the Nashville culinary community." According to Mr. Loftis, Mr. Rayburn's words and conduct "caused Plaintiff great embarrassment, humiliation and emotional distress. As a direct consequence, Plaintiff has been unable to find comparable work in Nashville, Tennessee."

Mr. Loftis described his false light cause of action as follows:

Pursuant to an interview with Mr. Jim Myers of *The Tennessean*, the Defendant Randy Rayburn spoke words that were of and concerning the Plaintiff. The words spoken by Rayburn were thereafter published by Mr. Myers in *The Tennessean* article dated March 2, 2016. Mr. Rayburn placed the Plaintiff before the public in a false light and is therefore liable to the Plaintiff for invasion of his privacy. The false light in which Plaintiff was placed would be highly offensive to a reasonable person, in this instance accusing the Plaintiff of incompetence and personally responsible for alleged and unsubstantiated deficiencies of unnamed persons. The tenor of the article and of Mr. Rayburn's comments suggested that a list of well-known local chefs unanimously agreed with this proposition, but that was not true. The Defendant had actual knowledge of or acted with reckless disregard to the falsity of the matters asserted and the false light in which the Plaintiff was placed.

Mr. Loftis described his claim for defamation by implication or innuendo as follows:

The publication complained of and the words of Rayburn therein plainly implied that the lack of proper performance by unidentified employees of unnamed chefs in restaurants or as [sic] a consequence of the incompetence

of the Plaintiff, even though that statement was not literally made. When read and construed in the sense in which a reader would ordinarily understand it, the clear implication was that any failure of a restaurant employee who had attended the school was the fault of the Plaintiff.

Mr. Loftis sought compensatory damages in the amount of $500,000 and punitive damages in an amount up to $1,000,000.

Mr. Rayburn moved to dismiss Mr. Loftis's amended complaint asserting, *inter alia*, that the statements complained of were not capable of defamatory meaning or inference as a matter of law. The trial court held a hearing on July 10, 2017, and it entered an order dismissing the amended complaint on July 19, 2017, ruling that the statements complained of were not defamatory and failed to create liability as a matter of law. The court wrote:

1. The Plaintiff has filed claims for false light invasion of privacy and defamation by implication or innuendo based on statements contained in a newspaper article attached to his Amended Complaint that was written by Jim Myers and published by *The Tennessean*. The Plaintiff has alleged that the statements contained in the article were spoken by the Defendant.

2. Under Tenn. R. Civ. P. 12.02(6), the Court construes the Plaintiff's Amended Complaint liberally in favor of the Plaintiff, taking all allegations of fact as true, and will deny the Defendant's Motion to Dismiss unless it appears that the Plaintiff can prove no set of facts in support of his claims that would entitle him to relief.

3. Under applicable law, the statements contained in the article must be read as a person of ordinary intelligence would understand them in light of the surrounding circumstances; the Court is not bound by the Plaintiff's interpretations of the statements contained in the article; there is significant and substantial overlap between false light and defamation; and whether any statement contained in the article is capable of being understood as defamatory is a question of law to be determined by the Court.

4. Applying these standards to the instant case, the Court is of the opinion that the statements contained in *The Tennessean* article are not capable of conveying a defamatory meaning and that they do not give rise to liability as a matter of law.

5. THEREFORE, the Defendant's Motion to Dismiss the Plaintiff's Amended Complaint is GRANTED. The Plaintiff's Amended Complaint,

and each cause of action therein, is hereby DISMISSED with prejudice for
failure to state a claim upon which relief can be granted.

Mr. Loftis filed a notice of appeal followed by a notice that no transcript or statement of evidence would be filed. Mr. Rayburn then filed a notice that a transcript or statement of the proceedings would be filed as part of the appellate record pursuant to Tenn. R. App. P. 24(d). Mr. Rayburn asked the trial court to assess Mr. Loftis for the cost of preparing the transcript of the proceedings if the court deemed a full transcript to be necessary. The trial court issued an order on August 8, 2017, stating that "the transcript of proceedings is necessary to convey a complete account of what transpired at the hearing" and directing Mr. Loftis to assume the expense of preparing the transcript. Mr. Loftis filed a motion to alter, amend, and to set aside the August 8 order regarding the transcript, which the trial court denied.

On appeal, Mr. Loftis raises the following arguments: (1) whether Mr. Rayburn's public comments placed Mr. Loftis in a negative and unfair light; (2) whether Mr. Rayburn should have known that Mr. Loftis, as a reasonable man, would be seriously aggrieved and offended by publicity suggesting that pervasive incompetence among line cooks in Nashville was directly attributable to him; (3) whether the trial court's order dismissing the amended complaint should be set aside for failure to rule upon the theories Mr. Loftis advanced; (4) whether the order requiring Mr. Loftis to bear the cost of the transcript should be reversed; and (5) whether Mr. Rayburn should be sanctioned for characterizing Mr. Loftis's attorney's statement at the hearing as a judicial admission.

Mr. Rayburn raises the following additional issues on appeal: (1) whether he is entitled to attorney's fees pursuant to Tenn. Code Ann. § 29-20-113; (2) whether he is entitled to attorney's fees for defending against a meritless claim for sanctions; and (3) whether Mr. Loftis's appeal is frivolous within the meaning of Tenn. Code Ann. § 27-1-122.

## II. ANALYSIS

The trial court dismissed Mr. Loftis's complaint for failing to state a claim for which relief could be granted. *See* TENN. R. CIV. P. 12.02(6). A motion to dismiss is resolved "by an examination of the pleadings alone." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011).[1] A defendant filing a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Id.*

---

[1]Mr. Loftis attached a copy of *The Tennessean* article to his amended complaint, rendering it a part of the pleadings and appropriate for consideration by the court ruling on a motion to dismiss. *See Belton v. City of Memphis*, No. W2015-01785-COA-R3-CV, 2016 WL 2754407, at *4 (Tenn. Ct. App. May 10, 2016); *McGhee v. Shelby Cnty. Gov't*, No. W2012-00185-COA-R3-CV, 2012 WL 2087188, at *1 n.2 (Tenn. Ct. App. June 11, 2012).

(quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)). When ruling on a motion to dismiss, courts are required to '"construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences."' *Id.* (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007)). "A trial court should grant a motion to dismiss 'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Id.* (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). We review the trial court's decision to grant a defendant's motion to dismiss de novo. *Id.* (citing *Brown*, 328 S.W.3d at 855, and *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)).

We begin with Mr. Loftis's argument about why he believes *The Tennessean* article gives rise to a claim against Mr. Rayburn for false light invasion of privacy or defamation by implication or innuendo. The portions of the article that Mr. Loftis focuses on include the following:

- Mr. Rayburn's concern over "the dearth of qualified line cooks in town, from our best restaurants to the hotels and convention centers. [Mr.] Rayburn recognized this need every day in his kitchen . . . so he decided to do something about it by dedicating himself to helping build a Culinary Arts program at what used to be called Nashville Tech."

- Mr. Rayburn's perspective that "it hasn't been easy." "When he supposedly sought the help [from] an unnamed and unnumbered set of local restauranteurs for feedback, 'the reports he got back weren't flattering. The program was simply turning out unqualified students.'"

- Mr. Rayburn's decision to "apply his experience 'in how to cut losses and move on quickly.' He 'decided to get more involved.'"

- "Mr. Rayburn's management involvement began 'by cleaning house from the top by removing director Tom Loftis.'"

According to Mr. Loftis,

The unmistakable suggestion of [Mr. Rayburn's] remarks was that: (1) line cooks in Nashville were unqualified; (2) all of these persons graduated from Nashville State; (3) all of them were unqualified because of some implied incompetence on the part of Mr. Loftis; (4) [Mr.] Rayburn's reputation in the culinary community was at risk; and (5) therefore, it was

necessary to "clean house" by removing the man depicted as personally responsible for the perceived deficiencies.

## A. Defamation by Implication

The basis of a defamation action is that the "allegedly defamatory statement has injured the plaintiff's character and reputation." *Aegis Scis. Corp. v. Zelenik*, No. M2012-00898-COA-R3-CV, 2013 WL 175807, at *5 (Tenn. Ct. App. Jan. 16, 2013) (citing *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818, 820 (Tenn. 1994)). To prevail on a claim for defamation, a plaintiff must establish that (1) the defendant published a statement, (2) the defendant knew the statement was false and defamatory to the plaintiff, and (3) the defendant acted "'with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement.'" *Id.* (quoting *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999)). As we have explained in earlier defamation cases,

> "For a communication to be libelous, it must constitute a serious threat to the plaintiff's reputation. A libel does not occur simply because the subject of a publication finds the publication annoying, offensive or embarrassing. The words must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule. They must carry with them an element 'of disgrace.'"

*Revis v. McClean*, 31 S.W.3d 250, 252-53 (Tenn. Ct. App. 2000) (quoting *Stones River Motors, Inc. v. Mid-South Publ'g Co., Inc.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983) (citations omitted)); *see also Isbell v. Travis Electric Co.*, No. M1999-00052-COA-R3-CV, 2000 WL 1817252, at *5 (Tenn. Ct. App. Dec. 13, 2000) (stating libel is type of defamation). A statement is defamatory "'if it tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her].'" *Biltcliffe v. Hailey's Harbor, Inc.*, No. M2003-02408-COA-R3-CV, 2005 WL 2860164, at *4 (Tenn. Ct. App. Oct. 27, 2005) (quoting RESTATEMENT (SECOND) OF TORTS § 559 (1977)).

Tennessee courts first recognized the tort of defamation by implication or innuendo in *Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412 (Tenn. 1978). In that case, a newspaper published a story about a wife who shot her husband and another woman after the wife found her husband at the other woman's house. *Nichols*, 569 S.W.2d at 414. The woman who was shot sued the newspaper for defamation, asserting that the newspaper falsely implied that she was having an affair with the assailant's husband and that the assailant caught them together when she fired the shots. *Id.* The undisputed evidence showed, however, that several people were at the plaintiff's house when the assailant found her husband, and they were all just sitting around the living room talking. *Id.* The newspaper defended the defamation action by emphasizing that

everything it printed in the article was true. The *Nichols* Court wrote that the truth of the statements did not relieve the newspaper of liability if "the meaning reasonably conveyed by the published words is defamatory." *Id.* at 420. The Court explained that "[t]he published statement . . . so distorted the truth as to make the entire article false and defamatory. It is no defense whatever that individual statements within the article were literally true. Truth is available as an absolute defense only when the defamatory meaning conveyed by the words is true." *Id.*

The *Nichols* Court did not describe the type of defamation at issue in the case as "defamation by implication," or "defamation by innuendo," but later courts acknowledged that *Nichols* was the first Tennessee case to recognize the doctrine of defamation by innuendo or implication. *Isbell*, 2000 WL 1817252, at *6; *see also Eisenstein v. WTVF-TV, News Channel 5 Network, LLC*, 389 S.W.3d 313, 318 n.5 (Tenn. Ct. App. 2012). The Court of Appeals has explained that "a statement may be capable of defamatory meaning even if the words do not appear defamatory on their face, but instead imply or suggest a defamatory meaning." *Grant v. Commercial Appeal*, No. W2015-00208-COA-R3-CV, 2015 WL 5772524, at *11 (Tenn. Ct. App. Sept. 18, 2015). In other words, even if a defendant's statements are true, the defendant may be liable if the statements "imply facts that are not true." *Id.* at *12 (citing *Zelenik*, 2013 WL 175807, at *11). "'The rationale behind this rule is that, when truthful statements carry a defamatory innuendo, the factual implication should also be true to justify the implication.'" *Isbell*, 2000 WL 1817252, at *6 (quoting *Fitzgerald v. Tucker*, 737 So. 2d 706, 717 (La. 1999)).

"Whether a communication is capable of conveying a defamatory meaning is a question of law." *Revis*, 31 S.W.3d at 253 (citing *Pate v. Serv. Merch. Co., Inc.*, 959 S.W.2d 569 (Tenn. Ct. App. 1996)); *see also Nichols*, 569 S.W.2d at 419. According to the *Grant* court:

> A trial court may determine that a statement is not defamatory as a matter of law only when "the statement is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense." *Aegis Sciences Corp.*, 2013 WL 175807, at *6 (citing *Biltcliffe v. Hailey's Harbor, Inc.*, No. M2003-02408-COA-R3-CV, 2005 WL 2860164, at *4 (Tenn. Ct. App. Oct. 27, 2005)). When considering whether a statement is capable of being defamatory, it must be judged within the context it is made. *Revis*, 31 S.W.3d [at] 253. Additionally, it "should be read as a person of ordinary intelligence would understand [it] in light of the surrounding circumstances." *Id.* (citations omitted). To this end, courts are not bound to the plaintiff's interpretation of the allegedly defamatory material, and if the words "do not reasonably have the meaning plaintiff ascribes to them, the court must disregard" plaintiff's interpretation. *Stones River Motors, Inc. v. Mid-South Publ'g Co.*, 651

S.W.2d 713[, 719] (Tenn. Ct. App. 1983) (citing *Dupont Eng'g Co. v. Nashville Banner Publ'g Co.*, 13 F.2d 186 (M.D. Tenn. 1925)).

*Grant*, 2015 WL 5772524, at *10.

To prevail on his defamation by implication or innuendo claim, Mr. Loftis must establish in his complaint that Mr. Rayburn published the statements and that the meaning reasonably conveyed by the statements was defamatory. *Nichols*, 569 S.W.2d at 420. As *Grant* instructs, if the statements at issue are true but they imply facts that are not true, a defendant who made the statements may be liable for defamation by implication or innuendo. *Grant*, 2015 WL 5772524, at *12.

Mr. Rayburn is not the author of the article, and he is not quoted anywhere in the article. However, Mr. Loftis asserted in his amended complaint that during an interview with Mr. Myers, Mr. Rayburn spoke the words that Mr. Myers printed. For purposes of ruling on Mr. Rayburn's motion to dismiss, we construe the complaint liberally and presume all factual allegations are true. *Webb*, 346 S.W.3d at 426. Thus, we find that Mr. Loftis has asserted that Mr. Rayburn made the statements that Mr. Loftis finds objectionable.

Mr. Loftis does not question the literal truth of the statements in the article, but he argues they imply that he personally was to blame for the unqualified line cooks in Nashville. We do not agree. Mr. Myers' statement that the school's culinary program was not turning out qualified students appears to have been based on the feedback Mr. Rayburn got from other chefs in the area. The article does not suggest that all of the unqualified line cooks in the area received training at the culinary program at Nashville Tech or that Mr. Loftis was to blame for the dearth of qualified line cooks, as Mr. Loftis argues. Mr. Loftis is not mentioned at all until the second page, toward the end of the article, when Mr. Myers wrote: "They started by cleaning house from the top by removing director Tom Loftis." Mr. Myers does not clarify who "they" were, and the article does not impugn Mr. Loftis personally. Contrary to Mr. Loftis's argument, we do not believe the article can reasonably be interpreted as depicting Mr. Loftis as "personally responsible for the perceived deficiencies of the culinary program."

The only other time Mr. Loftis is mentioned in the article is in the sentence: "It [removing Tom Loftis] was a politically inexpedient move last year since Loftis was the brother-in-law of Bill Freeman who was running for mayor at the time. If the election had gone a different way, it might have affected funding for the school." This sentence simply notes the relationship of Mr. Loftis to Mr. Freeman and has nothing to do with Mr. Loftis's character, reputation, or ability as the director of the culinary program. Mr. Loftis's assertion that this statement implies he "might unethically have retaliated by punishing the school with a loss of funding from the Metropolitan Government, should

Mr. Freeman become Mayor" is far-fetched and not a reasonable interpretation of the statement.

We find as a matter of law that the statements in Mr. Myers' article cannot reasonably be construed as implying facts that are not true, as they must to qualify as defamatory by implication or innuendo. *Grant*, 2015 WL 5772524, at \*11. We are not bound by Mr. Loftis's interpretation of the statements because we find they do not reasonably have the meaning he ascribes to them. *Id.* at \*10. We find the statements Mr. Loftis focuses on cannot reasonably be interpreted as holding Mr. Loftis "'up to public hatred, contempt or ridicule,"' *Revis*, 31 S.W.3d at 253 (quoting *Stones River Motors*, 651 S.W.2d at 719), or as lowering him in the eyes of the community, *Biltcliffe*, 2005 WL 2860164, at \*4. Thus, we affirm the trial court's decision granting Mr. Rayburn's motion to dismiss Mr. Loftis's claim for defamation by implication or innuendo.

### B. False Light Invasion of Privacy

Tennessee first recognized the tort of false light invasion of privacy in *West v. Media General Convergence, Inc.*, 53 S.W.3d 640 (Tenn. 2001). The *West* Court announced that Section 652E of the Restatement (Second) of Torts (1977), as modified, accurately describes the elements of the tort for purposes of plaintiffs in Tennessee. *West*, 53 S.W.3d at 641; *see also Eisenstein*, 389 S.W.3d at 317. According to the Restatement (Second) of Torts,

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

RESTATEMENT (SECOND) OF TORTS § 652E (1977).

The *West* Court departed from the Restatement by stating that Tennessee does not require a plaintiff asserting a false light cause of action to prove actual malice unless the plaintiff is a public official or public figure. *West*, 53 S.W.3d at 647; *see also Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 303 (Tenn. Ct. App. 2007). The *West* Court emphasized that a defendant will not be liable for false light invasion of privacy unless "the publicity is highly offensive to a reasonable person." *West*, 53 S.W.3d at 646

- 10 -

(citing RESTATEMENT (SECOND) OF TORTS § 652E(a)).[2] If a defendant publishes "intentionally falsified" information about a plaintiff, the plaintiff is unable to recover under the theory of false light invasion of privacy unless the publication constitutes a "seriously offensive misstatement." *Id.*

As with defamation by implication, a statement's truth will not protect a defendant from liability when a plaintiff asserts a false light invasion of privacy cause of action. *Eisenstein*, 389 S.W.3d at 317. As the *West* Court explained,

> The facts may be true in a false light claim. However, the angle from which the facts are presented, or the omission of certain material facts, results in placing the plaintiff in a false light. "'Literal accuracy of separate statements will not render a communication "true" where the implication of the communication as a whole was false.' . . . The question is whether [the defendant] made 'discrete presentations of information in a fashion which rendered the publication *susceptible to inferences* casting [the plaintiff] in a false light.'" *Santillo v. Reedel*, 430 Pa. Super. 290, 634 A.2d 264, 267 (1993) (citing *Larsen v. Philadelphia Newspapers, Inc.*, 375 Pa. Super. 66, 543 A.2d 1181 (1988) (emphasis added)).

*West*, 53 S.W.3d at 645 n.5. Thus, the *Eisenstein* court wrote, "the falsehood involved in a false light action 'may consist in dissemination of matters which, while technically true, give an objectionably false impression where the communicator fails to modify the basic statement with amplifying facts which modify the statement to create a less objectionable impression corresponding to full reality.'" *Eisenstein*, 389 S.W.3d at 318 (quoting Russell G. Donaldson, Annotation, *False Light Invasion of Privacy—Cognizability and Elements*, 57 A.L.R. 4TH 22, § 13 (Cum. Supp. 2012)).

The Court of Appeals addressed the type of publicity that is required for a plaintiff to prevail on a false light claim in *Brown v. Mapco Express, Inc.*, 393 S.W.3d 696 (Tenn. Ct. App. 2012). The *Brown* court explained that the offensive statements at issue must be "'made public, by communicating [them] to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public

---

[2]Comment c to the Restatement (Second) of Torts § 652E addresses the requirement that the offensive statement be "highly offensive to a reasonable person," stating in relevant part:

> The rule stated in this Section applies only when the publicity given to the plaintiff has placed him in a false light before the public, of a kind that would be highly offensive to a reasonable person. In other words, it applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity. . . . It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy.

knowledge.'" *Brown*, 393 S.W.3d at 707 (quoting *Secured Fin. Solutions, LLC v. Winer*, No. M2009-00885-COA-R3-CV, 2010 WL 334644, at *4 (Tenn. Ct. App. Jan. 28, 2010) (itself quoting RESTATEMENT (SECOND) OF TORTS § 652D cmt. a)). A defendant's communication to "one person or a small group of persons" "'fails, as a matter of law, to satisfy the 'publicity' requirement of the tort of false light invasion of privacy.'" *Id.* (quoting *Winer*, 2010 WL 334644, at *4).

To prevail on his false light invasion of privacy claim, Mr. Loftis must show that the statements he asserts Mr. Rayburn made through Mr. Myers' article placed him in a false light and that the false light would be "highly offensive" to a reasonable person. We find Mr. Loftis satisfied the publicity requirement of the tort through his assertion that Mr. Rayburn conveyed the information in the article to Mr. Myers during an interview. Although Mr. Loftis asserts that Mr. Rayburn spoke the statements at issue only to Mr. Myers, it is fair to assume Mr. Rayburn knew Mr. Myers was a reporter for *The Tennessean* and that Mr. Myers would report his statements in the newspaper. The Restatement (Second) of Torts addresses the publicity requirement by explaining in a comment that the matter at issue must be "made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." RESTATEMENT (SECOND) OF TORTS § 652D cmt. a. The comment continues:

> Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication.

We do not, however, believe that the statements can be considered "highly offensive to a reasonable person," as they must be for Mr. Loftis to proceed with this claim. *West*, 53 S.W.3d at 643-44; *Eisenstein*, 389 S.W.3d at 317. For the reasons we found the statements in Mr. Myers' article fail to imply a defamatory meaning, we also find they are not susceptible to the requisite inferences casting Mr. Loftis in a false light. *See West*, 53 S.W.3d at 645 n.5. We do not believe a reasonable person would be justified, in the eyes of the community, of being seriously offended and aggrieved by the statements at issue. *See* RESTATEMENT (SECOND) OF TORTS § 652E cmt. c. Accordingly, we affirm the trial court's decision granting Mr. Rayburn's motion to dismiss Mr. Loftis's false light invasion of privacy cause of action.[3]

---

[3]We decline to address the other grounds Mr. Rayburn briefs in support of the trial court's order

C.  Trial Court's Order

Mr. Loftis asserts that the trial court failed to address the elements of his false light or defamation by implication or innuendo causes of action in its order granting Mr. Rayburn's motion to dismiss and that the order should, therefore, be set aside.  Upon reviewing the trial court's order, we find the court recognized both causes of action Mr. Loftis asserted in his amended complaint, announced the proper standard for considering Mr. Rayburn's motion to dismiss, and properly stated, "[u]nder applicable law, the statements contained in the article must be read as a person of ordinary intelligence would understand them in light of the surrounding circumstances; the Court is not bound by the Plaintiff's interpretations of the statements contained in the article."  Then, after noting that "there is significant and substantial overlap" between Mr. Loftis's false light and defamation causes of action, the trial court found that the statements contained in the newspaper article "are not capable of conveying a defamatory meaning" and "do not give rise to liability as a matter of law."

The trial court correctly stated that there is a significant and substantial overlap between the torts of defamation by implication or innuendo and false light invasion of privacy.  *See Eisenstein*, 389 S.W.3d at 318 n.5 (quoting *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1113 (Fla. 2008)).  As we explained in *Eisenstein*, the primary distinction between the two torts is the type of injury addressed:  "'in defamation cases the interest sought to be protected is the objective one of reputation, either economic, political, or personal, in the outside world.  In privacy cases the interest affected is the subjective one of injury to [the] inner person.'"  *Id*. (quoting *West*, 53 S.W.3d at 645-46); *see also Winer*, 2010 WL 334644, at *4.  The *West* Court noted that damages resulting from false light invasion of privacy may include injury to standing in a community, humiliation, or emotional distress.  *West*, 53 S.W.3d at 648.

As we discussed above, the statements at issue must be capable of implying a defamatory meaning to survive a motion to dismiss a defamation by implication or innuendo claim, *Grant*, 2015 WL 5772524, at *11, and they must cast the plaintiff in a false light in such a way that they could be highly offensive to a reasonable person to survive a motion to dismiss a false light claim, *West*, 53 S.W.3d at 646.  Because of the overlap between the two torts, when the trial court held that the statements in the article "are not capable of conveying a defamatory meaning" and "do not give rise to liability as a matter of law," we find the trial court's holding applied to both of Mr. Loftis's causes of action and that the trial court sufficiently addressed the elements of each tort.[4]

dismissing Mr. Loftis's amended complaint because they are pretermitted by our holding that the statements in the newspaper article are not defamatory as a matter of law.
[4]In any event, because we review the trial court's judgment granting Mr. Rayburn's motion to dismiss de novo, with no deference given to the trial court's decision, any deficiencies in the trial court's order are rectified herein, on appeal.

D.  Cost of the Transcript

Mr. Loftis next complains the trial court erred in requiring him to pay the expense of preparing a transcript of the hearing on Mr. Rayburn's motion to dismiss.  Tennessee Rule of Appellate Procedure 24(d) allows an appellee to file a transcript of proceedings and ask the court to assess the cost of its preparation to the appellant if the appellant notifies the court and the appellee that he or she does not intend to file a transcript.  This rule states, in relevant part:

> If no transcript or statement of the evidence or proceedings is to be filed, the appellant shall, within 15 days after filing the notice of appeal, file with the clerk of the trial court and serve upon the appellee a notice that no transcript or statement is to be filed. If the appellee deems a transcript or statement of the evidence or proceedings to be necessary, the appellee shall, within 15 days after service of the appellant's notice, file with the clerk of the trial court and serve upon the appellant a notice that a transcript or statement is to be filed. The appellee shall prepare the transcript or statement at the appellee's own expense or apply to the trial court for an order requiring the appellant to assume the expense.

Mr. Loftis filed a notice on July 26, 2017, that he did not intend to file a transcript or statement of evidence.  Then, on July 31, 2017, Mr. Rayburn filed a notice pursuant to Rule 24(d) in which he stated his belief that a record of the hearing on his motion to dismiss was essential for appellate review.  He requested that the trial court include a transcript of the proceedings in the appellate record and asked the court to charge Mr. Loftis with the cost of preparing it if the court deemed a full transcript of the proceedings to be necessary.  The trial court issued an order on August 8, 2017, in which it stated that "the transcript of proceedings is necessary to convey a complete account of what transpired at the hearing" and then directed Mr. Loftis to "assume the expense of the preparation of the Transcript of Evidence."

Mr. Loftis takes issue with the trial court's order, in part because the trial court referred to the transcript as containing "evidence" rather than simply containing a record of the "proceedings."  Mr. Loftis argues that the record contains no "evidence" because his amended complaint was dismissed pursuant to a motion to dismiss.  Mr. Rayburn responds that the trial court properly referred to the transcript as containing a record of the "proceedings."  Mr. Rayburn further argues that the record includes Mr. Loftis's attorney's response to a question by the court, and this response constitutes a judicial admission, which is evidence.[5]

---

[5]Mr. Rayburn cites the following colloquy in support of his argument that Mr. Loftis's attorney made a judicial admission:

Tennessee Rule of Appellate Procedure 24 governs the contents of the appellate record, and it "is designed to ensure that the record on appeal conveys 'a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal.'" *Bradshaw v. Daniel*, 854 S.W.2d 865, 868 (Tenn. 1993) (quoting TENN. R. APP. P. 24(a)). Appellate courts give deference to a trial court's decision about the contents of an appellate record because "[t]he trial court is in the best position to determine those matters necessary to provide a fair, accurate, and complete account of the proceedings upon which the appeal is based." *State v. Housler*, 167 S.W.3d 294, 296 (Tenn. 2005); *see also Bradshaw*, 854 S.W.2d at 868 ("'Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court.'") (quoting TENN. R. APP. P. 24(e)); *Artrip v. Crilley*, 688 S.W.2d 451, 453 (Tenn. Ct. App. 1985) ("The trial court is the final arbiter of the transcript or statement of the proceedings.").[6]

Subsection (e) of Appellate Rule 24 provides, in pertinent part:

Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. *Absent extraordinary circumstances, the determination of the trial court is conclusive.* If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

(Emphasis added.) As subsection (e) states, the trial court's decision about whether the transcript of the hearing accurately discloses what occurred in the trial court and whether it should be included in the record is conclusive, "absent extraordinary circumstances." Mr. Loftis fails to cite any extraordinary circumstances to justify reversing the trial court's decision on this issue.

The trial court has discretion to apportion costs between the parties, and "appellate courts are generally disinclined to interfere with a trial court's decision in assessing costs unless there is a clear abuse of discretion." *Perdue v. Green Branch Mining Co., Inc.*,

THE COURT: Now, wait, but it says - - it didn't say - - he says "they." Who's the "they" in "They started by cleaning house"?

Mr. BLACKBURN: Well, they're describing him as the - - as the voice of the school, as the board, as the - - the person for whom the school is named - - named. And the next paragraph begins with, "Rayburn's group knew they needed fresh blood." That's what they knew.

[6]We also note that Tenn. R. App. P. 24(h) permits any party to "prepar[e] and fil[e] with the clerk of the trial court a transcript or statement of the evidence or proceedings at any time prior to entry of an appealable judgment or order."

- 15 -

837 S.W.2d 56, 60 (Tenn. 1992). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010); *see also Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Under this standard, we are not permitted to second-guess the trial court's decision or substitute our discretion for that of the lower court. *Beecher*, 312 S.W.3d at 524. Mr. Loftis is the appellant here, and the appellant is normally the party taxed with the cost of preparing the transcript of proceedings for purposes of an appeal. *See* Tenn. R. App. P. 24(b). Mr. Loftis has failed to show the trial court abused its discretion in assessing him with the cost of preparing the transcript of the proceedings. Thus, we affirm the trial court's assessment of the cost to Mr. Loftis.

### E. Mr. Loftis's Request for Sanctions

We turn next to Mr. Loftis's argument that Mr. Rayburn should be sanctioned for suggesting that Mr. Loftis's attorney's response to the trial court judge about the meaning of "they" in the newspaper article can be treated as a judicial admission. The Court of Appeals has stated that "a statement of counsel in pleadings or stipulation or orally in court is generally regarded as a conclusive, judicial admission . . . ." *Belew v. Gilmer*, No. 01-A-019010-CV-00365, 1991 WL 45396, at *6 (Tenn. Ct. App. Apr. 5, 1991); *see also Garland v. Seaboard Coastline R.R. Co.*, 658 S.W.2d 528, 531 (Tenn. 1983) (stating counsel's admission in open court during hearing on motion to dismiss "is binding on the defendant in this Court"). Mr. Loftis fails to address or distinguish these cases, and he fails to explain why Mr. Rayburn's characterization of Mr. Loftis's attorney's response should not be treated as a judicial admission that is binding on Mr. Loftis or to cite any authority in support of his request for sanctions. We, therefore, find Mr. Loftis's suggestion that Mr. Rayburn should be sanctioned has no merit.

### F. Issues Mr. Rayburn Raises on Appeal

Mr. Rayburn argues that he is entitled to attorney's fees pursuant to Tenn. Code Ann. § 29-20-113(a). This statute provides, in relevant part:

> [I]f a claim is filed with a Tennessee or federal court, the Tennessee claims commission, board of claims, or any other judicial body established by the state or by a governmental entity of the state, against an employee of the state or of a governmental entity of the state in the person's individual capacity, and the claim arises from actions or omissions of the employee acting in an official capacity or under color of law, and that employee prevails in the proceeding as provided in this section, then the court or other judicial body on motion shall award reasonable attorneys' fees and costs incurred by the employee in defending the claim filed against the employee.

Mr. Rayburn states in his brief that "[t]he Trial Court did not adjudicate Mr. Rayburn's claim for attorney's fees, presumably because other fee-shifting statutes provide for such adjudication only after the appellate process has been exhausted." In the footnote that follows this statement, Mr. Rayburn refers the reader to Tenn. Code Ann. § 20-12-119(c)(3). Subsection (c)(1) requires an award of costs, including attorney's fees, when the motion to dismiss is successful. Subsection (c)(3) states:

> An award of costs pursuant to this subsection (c) shall be made only after all appeals of the issue of the granting of the motion to dismiss have been exhausted and if the final outcome is the granting of the motion to dismiss. The award of costs and attorneys' fees pursuant to this section shall be stayed until a final decision which is not subject to appeal is rendered.[7]

Due to an absence of findings about Mr. Rayburn's status under Tenn. Code Ann. § 29-20-113(a) and the dictates of Tenn. Code Ann. § 20-12-119(c)(3), we remand this matter to the trial court for a determination of the amount of attorney's fees, if any, to be awarded.

Mr. Rayburn next argues he is entitled to attorney's fees for defending against a meritless claim for sanctions. Mr. Rayburn contends that Mr. Loftis, in asking that Mr. Rayburn be sanctioned for characterizing Mr. Loftis's attorney's response to the trial court judge's question about the meaning of "they" in the newspaper article as a judicial admission, should have filed a motion pursuant to Tenn. R. Civ. P. 11.03, which he did not do.[8] However, Mr. Rayburn cites no authority in support of his request for an award of attorney's fees for defending against Mr. Loftis's claim for sanctions, and we are aware of no authority entitling him to such fees.

---

[7] We note that Tenn. Code Ann. § 20-12-119(c)(5) expressly states that subsection (c) "shall not apply to: (A) Actions by or against the state, other governmental entities, or public officials acting in their official capacity or under color of law. . . ."

[8]The relevant portion of this rule provides:

> (a) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision 11.02. It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

Mr. Rayburn's final argument is that Mr. Loftis's appeal was frivolous and that he is entitled to an award of damages for having to defend a frivolous appeal. Mr. Rayburn relies on Tenn. Code Ann. § 27-1-122 for this argument, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Any award under this statute "rests in the appellate court's sound discretion," which "is exercised 'sparingly so as not to discourage legitimate appeals.'" *Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017) (quoting *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006)). We decline to find that Mr. Loftis's appeal was frivolous and deny Mr. Rayburn's request for fees pursuant to this statute.

### III. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment dismissing Mr. Loftis's amended complaint. The issue of attorney's fees is remanded to the trial court. The costs of this appeal are taxed against the appellant, Thomas Nathan Loftis, Sr., for which execution shall issue if necessary.

_____
ANDY D. BENNETT, JUDGE