IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 20, 2019 Session

## ANGELA M. GUNTER v. ESTATE OF JAIME B. ARMSTRONG ET AL.

Appeal from the Circuit Court for Greene County
No. CC-2017-CV-144          Beth Boniface, Judge

_____

No. E2018-01473-COA-R3-CV
_____

This appeal presents the issue of whether an employer can be held liable for the tortious harm its employee inflicted on a third party during an automobile accident when that accident occurred after the employee departed her workplace but prior to the end of her work shift. The trial court entered an order granting summary judgment in favor of the employer. The third-party plaintiff has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

Thomas L. Kilday, Greeneville, Tennessee, for the appellant, Angela M. Gunter.

T. Kenan Smith, Knoxville, Tennessee, for the appellee, Envision, Inc.

## OPINION

### I. Factual and Procedural Background

On March 22, 2017, Angela M. Gunter filed a complaint in the Greene County Circuit Court ("trial court") against the Estate of Jaime B. Armstrong ("the Estate"), Brian J. Armstrong, and Envision, Inc. ("Envision"). Ms. Gunter alleged that on August 20, 2016, while she was driving her vehicle on Jones Bridge Road in Greene County, Tennessee, a vehicle in the oncoming lane being driven by Jaime Armstrong ("Decedent") suddenly crossed the center of the roadway, causing a head-on collision

with Ms. Gunter's vehicle. According to Ms. Gunter, although the vehicle being driven by Decedent was titled to Decedent and her husband, Brian Armstrong, Decedent was engaged within the course and scope of her employment with Envision at the time of the crash. Ms. Gunter alleged that she was severely and permanently injured by Decedent's negligence and that such negligence could be attributed to Mr. Armstrong, based on the family purpose doctrine, and Envision, based on the employment relationship.

Envision filed an answer to the complaint on April 3, 2017, admitting that Decedent had been employed with Envision at the time of the accident but denying that she was engaged within the course and scope of her employment when the accident occurred. Envision accordingly denied any liability toward Ms. Gunter. Mr. Armstrong and the Estate filed an Answer on April 21, 2017, also denying liability.

On January 26, 2018, Ms. Gunter filed a motion seeking to amend her complaint to add claims against Envision of negligent hiring and supervision. Ms. Gunter asserted that Decedent had a twenty-year history of alcohol and drug abuse, as well as a history of psychiatric hospitalizations. Ms. Gunter therefore alleged that Envision was negligent in failing to properly screen Decedent before employment. Further alleged was negligence on the part of Envision for failing to properly supervise Decedent, such that Decedent was tired, overworked, and over-medicated at the time of the accident. The trial court granted permission allowing the amendment to the complaint. In response, Envision filed a subsequent answer wherein it continued to deny liability.

On February 23, 2018, Envision filed a motion for summary judgment, accompanied by a statement of undisputed material facts. In its statement of facts, Envision outlined that it was engaged in the business of providing in-home care for individuals with developmental delays and health issues and that Envision's employees would complete such tasks as providing transportation for clients to attend appointments, running errands, and providing job coaching. For support, Envision attached an affidavit from Decedent's supervisor, Donna Simerly, who stated that Decedent had passed a drug test and background check before her employment and always presented a well-kept and professional appearance. Ms. Simerly further related that the Envision employees who interacted with Decedent on a regular basis had not reported any concerns about Decedent's behavior or job performance. According to Ms. Simerly, Envision was a drug-free workplace, and Decedent was aware of this policy.

Ms. Simerly explained that on the morning of the accident, Decedent was scheduled to work until 8:00 a.m. but that she left the workplace at 7:30 a.m. without the permission of Ms. Simerly. According to Envision's statement of facts, the employee who relieved Decedent from her shift that morning testified that Decedent seemed tired but was steady on her feet and did not appear intoxicated. Envision's statement of facts

further provided that Decedent's husband and mother claimed they had not been aware of Decedent's use of drugs. Envision submitted additional affidavits and deposition excerpts in support of its summary judgment motion.

Ms. Gunter filed a response in opposition to the motion for summary judgment, disputing the facts as presented by Envision. Ms. Gunter alleged, *inter alia*, that the accident occurred at a time when Decedent was "on call, on the clock, being paid by Envision"; that it was a regular practice for Envision employees to leave the workplace to run errands while remaining on the clock; and that Decedent was subject to being recalled to the workplace if needed or directed elsewhere for work activities. Ms. Gunter further asserted that Envision had failed to properly screen Decedent's background or to require her to submit to regular drug tests. Ms. Gunter attached various deposition excerpts, affidavits, and other documents to her response, as well as a statement of "additional facts creating a genuine issue for trial."

The trial court conducted a hearing regarding Envision's motion for summary judgment on April 30, 2018, and entered a judgment granting the motion on July 18, 2018. The court certified the judgment as final pursuant to Tennessee Rule of Civil Procedure 54.02. The court found as follows, in pertinent part, with regard to Ms. Gunter's claims against Envision:

> A plaintiff must show the following elements to invoke the doctrine of respondeat superior:
>
> 1. The person who caused the injury was an employee;
>
> 2. The employee was on the employer's business, and
>
> 3. The employee was acting within the scope of his employment when the injury occurred.
>
> * * *
>
> The undisputed facts of the accident show that [Decedent] left her job duties thirty minutes before her shift ended and she was in route to visit her paramour. Even if she was technically "on the clock," there is no connection between getting coffee for her paramour and her responsibilities to her employer, Envision. [Decedent's] departure from Envision's business was marked and decided. Although the undisputed facts show that it was not unusual for employees to leave their shift early if their replacements arrived, the mere fact that Envision would not fire an

-3-

employee for leaving work early does not bring [Decedent's] acts within the course and scope of her employment.

There was no dual purpose to [Decedent's] travels.

* * *

If [Decedent's] travel had been partially motivated by a work obligation, such as taking a client to a doctor's appointment, then there might have been a question of fact to present to the jury. In the case at bar, [Decedent's] employment played no part in creating the reason for travel. She was on a trip motivated by personal desires. Crediting all facts in the Plaintiff's favor, there is insufficient evidence to invoke the doctrine of respondeat superior.

* * *

In the case at bar, Gunter argues that [Decedent's] history of drug abuse and suicidal ideations made her unfit to be employed by Envision. Both parties agree that had Envision known of [Decedent's] struggles she would not have been hired. The issue is whether Envision should have done more to investigate her fitness for the job before hiring her. Envision performed a drug test on [Decedent] prior to her employment. The results of the drug screen were negative. The Tennessee Bureau of Investigation's background check did not list any alcohol or drug-related convictions. [Decedent] had interactions daily with staff and no one perceived any drug use or unusual behavior. There were no complaints to Envision regarding [Decedent's] fitness for the job. The only evidence of possible impairment was on the day of the accident when [Decedent] seemed "over the top tired." There is nothing in the record which would have alerted Envision to current drug use by [Decedent]. The only way Envision would have known about [Decedent's] struggles with illicit substances would have been to request all of her medical records. [Decedent] did not inform Envision of her history of addiction and abuse of drugs. Without cause, employers do not usually receive employees' medical records prior to employment. The only complaint ever made by [Decedent], or those that worked in the home alongside [Decedent], was of too much overtime.

Gunter further argues that if Envision had not employed [Decedent], then she would not have been on the road at the time of the accident. This argument is without merit. If she had finished her shift for her employer,

she would not have been at the scene to cause the crash. If she had not been employed with Envision, she still could have been on the road at the same time and place.

\* \* \*

[Decedent] left the business of her employer and was driving to get coffee for her paramour. She was under the influence of medication and/or fatigued when the automobile accident occurred. The inquiry would be very different if [Decedent] injured a client or employee of Envision while performing job duties. But instead, she injured an unrelated third party while not in the course or scope of her employment. There exists no special relationship between Envision and Gunter which would trigger a duty to protect Gunter.

\* \* \*

As previously discussed, Envision had no knowledge of [Decedent's] struggles with illicit substances. There is no evidence from which it can be said that Envision reasonably knew or should have known of the probability of the automobile accident which caused Gunter's injuries. There were complaints about work hours, but never any complaints about [Decedent's] fitness to perform her duties. Analysis of all the facts of this case shows that there was no reasonable basis on which to foresee any danger to Gunter. *Doe v. Linder Construction Co., Inc*., [845 S.W.2d 173,] 178-179 (Tenn. 1992).

The last inquiry is whether Envision's practice of requiring [Decedent] to work extended hours was negligent supervision. [Decedent] worked from 8:00 a.m. until 4:00 p.m. on August 17, 2016. She then worked from 8:00 a.m. until 4:00 p.m. on August 18, 2016. She was off of work for 28 hours and resumed her work obligations on August 19, 2016, at 8:00 p.m. until 7:30 a.m. on August 20, 2016. [Decedent] worked two 8 hour days, was off of work responsibilities for over a day, and then had an 11.5-hour shift. Upon arrival at work, [Decedent's] co-worker noted that [Decedent] was overly tired and offered to drive her home. [Decedent] left in her car before her co-worker could stop her. The Tennessee Supreme Court has stated in a workers' compensation case that:

> We cannot find that the plaintiffs have established a sufficient
> causal relationship between [the employee's] work activities

-5-

and his death. Further, the Supreme Court has refused to recognize such an exception to the general rule of noncompensability in a comparable case in which an exhausted worker was injured driving home after working long hours. *See Victory v. Cooper Co.*, No. 01-S-019008CU00068, 1991 WL 97306 (Tenn., June 10, 1991). Therefore, we hold that the plaintiffs cannot prevail on this issue.

*Bialecke v. Chattanooga Pub. Co.*, No. E2005-2560-WC-R3-CV, 2006 WL 2382846 (Tenn. Aug. 18, 2006). It is worth noting that in the present case, not only did an employee of Envision offer to give safe passage to [Decedent], [Decedent] had prescription medications in her system of which Envision was unaware. Envision had no complaints regarding [Decedent's] fitness for employment or her particular job responsibilities. Envision did not negligently supervise [Decedent].

Ms. Gunter timely appealed the trial court's grant of summary judgment in favor of Envision.

## II. Issues Presented

Ms. Gunter presents the following issues for our review, which we have restated slightly:

1.  Whether the trial court erred by entering summary judgment in favor of Envision when a genuine issue of material fact existed concerning whether Decedent was acting within the course and scope of her employment when the accident occurred.

2.  Whether the trial court erred by entering summary judgment in favor of Envision when a genuine issue of material fact existed regarding Envision's separate negligence in its employment and supervision of Decedent.

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013)

(citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party

must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, \_\_\_ S.W.3d \_\_\_, \_\_\_, No. M2017-00423-SC-R11-CV, 2019 WL 3491467, at *8 (Tenn. July 22, 2019) (quoting *Rye* 477 S.W.3d at 265)). Furthermore, pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

## IV. *Respondeat Superior*

Ms. Gunter contends that the trial court erred in its determination that Decedent was not acting within the course and scope of her employment at the time the accident occurred. Ms. Gunter further asserts that the pleadings, depositions, affidavits, and other documents contained within the record support reversal of the trial court's grant of summary judgment concerning her *respondeat superior* claim. According to Ms. Gunter, Decedent remained in the service of Envision as an "on the clock" employee at the time of the accident, even though she acknowledges that Decedent was pursuing a personal mission when the accident occurred. Having thoroughly reviewed the record and the applicable case law, this Court has located no support for the inference that Decedent was acting within the course and scope of her employment at the time of the accident.

This Court has previously elucidated that "[u]nder the doctrine of *respondeat superior*, an employer may be held vicariously liable for torts committed by its employee within the course and scope of his or her employment." *Heflin v. Iberiabank Corp.*, 571 S.W.3d 727, 735 (Tenn. Ct. App. 2018). For a court to hold an employer liable for its employee's tortious conduct, the party seeking to impose liability must establish the following: "(1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred." *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992). As this Court further explained:

> Generally, whether an employee is acting within the scope of his or her employment is a question of fact. *Craig v. Gentry,* 792 S.W.2d 77, 80 (Tenn. Ct. App. 1990). However, it becomes a question of law when the facts are undisputed and cannot support conflicting conclusions.

*Id.*

This Court has also clarified that liability should not be extended to an employer under the doctrine of *respondeat superior* under the following circumstances:

> If an employee who is supposed to perform certain work for his employer steps or turns aside from his employer's work or business to serve some purpose of his own, unconnected with the employer's business, or if he deviates or departs from his work to accomplish some purpose of his own that is unconnected with his employment, the relationship of employer and employee or master and servant is thereby temporarily suspended. The master or employer is not liable for the acts of the servant or employee during the period of such suspension, because the employee is then acting upon his own volition, obeying his own will, not as a servant or agent, but as an independent person, even though he may intend and does return to his employer's business after he has accomplished the purpose of his detour from duty. In other words, where a servant or employee deviates from his line of duty and engages in a mission of his own, or from some third person, the master or employer cannot be held liable or responsible for the acts of the servant or employee.

*Bowers v. Potts*, 617 S.W.2d 149, 156 (Tenn. Ct. App. 1981). In *Bowers*, an employee of a construction company, outside of his normal work hours, removed unwanted soil from a parcel of real property that was being improved by the construction company, and the employee was in the process of delivering the soil to a third party when an accident occurred. *Id.* at 153. The employee was being paid by the third party at the time of the accident. *Id.* This Court determined that, by removing and selling the soil, the employee had taken an action outside the typical duties of his office and that he did so without first receiving approval from his employer. *Id.* at 152-53. Because the employee never obtained his employer's approval of the soil delivery to the third party and because the employee's act of delivering the soil did not benefit the employer, this Court declined to extend liability to the employer for the employee's automobile accident that occurred while delivering the soil. *Id.* at 157; *but see Kinnard v. Rock City Constr. Co.,* 286 S.W.2d 352, 354-55 (Tenn. Ct. App. 1955) (determining that when a construction company employee caused a motor vehicle accident after being impliedly commanded by his employer to move his personal vehicle to allow the employer's lumber truck to pass, a jury question was presented concerning the employer's liability).

This Court has extended liability to an employer for harm resulting from its employee's automobile accident that occurred while the employee was running work-related errands. *See Craig v. Gentry,* 792 S.W.2d 77, 80 (Tenn. Ct. App. 1990). Although the employee in *Craig* was traveling to an auto repair shop for assistance with her vehicle at the time of the accident, this Court determined that she remained within the

scope of her employment during the brief detour. *Id*. In coming to that conclusion, this Court noted that the employee had not yet completed the employer's specified errands at the time she sought the repair help. *Id*. This Court explained that the employee's "attempt to take steps to see about the potential mechanical problems with her vehicle was all part and parcel of her continued journey to make her employer's bank deposit, rather than a personal mission of her own." *Id*.

As this Court has further explained:

> When an employee's job requires travel, an employer may be vicariously liable for the employee's negligence while traveling. The threshold issue in cases involving travel is whether the employment created the necessity for travel. If the employee's duties created a necessity for travel, then the employee is within the scope of employment while traveling, as long as the employee does not deviate from the employer's business and engage in conduct the employer had no reason to expect. If, however, the employee's work played no part in creating the reason for travel and was only incidental to the trip, then the trip was not within the scope of employment. Travel that serves a dual purpose, the employer's and the employee's or a third person's, will still be considered to be within the scope of employment.
>
> The courts have devised several helpful tests to determine whether a particular trip is within the scope of employment. If the trip would have taken place even without the business reasons, then the trip is personal and not within the scope of employment. If, however, the trip was one that would have required the employer to send another employee over the same route or to perform the same function if the trip had not been made, then the trip is within the scope of employment.

*Tenn. Farmers Mut. Ins. Co.*, 840 S.W.2d at 938-39 (internal citations omitted). Similarly, our Supreme Court has stated:

> [When the employee's travel] is planned and carried out for the [employee's] pleasure, or for the [employee's] purposes, the circumstance that he may on such a trip make some effort in his [employer's] behalf does not convert the trip to an errand for the [employer] and render the [employer] responsible for the negligent operation of the [employee's] vehicle.

*Cunningham v. Union Chevrolet Co.*, 147 S.W.2d 746, 748 (Tenn. 1941).

-10-

In the case at bar, in order to overcome the motion for summary judgment, Ms. Gunter needed to provide the trial court with facts supporting the proposition that Decedent's trip at the time of the accident fell within the scope of her employment. The proof is undisputed that Decedent, acting absent express permission from her employer, departed her workplace at 7:30 a.m., thirty minutes before the end of her shift as a home health nurse.

This Court first considers whether Decedent sought to advance some purpose or benefit for Envision when she was driving on the morning of the accident. In the above-referenced precedent, the courts of this State have clarified that an employee's action taken to accomplish a purpose unconnected with his or her employment generally serves to remove the action from the scope of the employment. *See Cunningham*, 147 S.W.2d at 748; *Tenn. Farmers Mut. Ins. Co.*, 840 S.W.2d at 938-39; *Bowers*, 617 S.W.2d at 156. According to the facts established in the record, the individuals with the greatest knowledge of Decedent's acts on the morning of the accident and her general work habits offered no evidence creating an inference that Decedent was engaged in any work-related errand at the time of the accident.

Hannah Stanton, a nurse whose shift overlapped with the end of Decedent's shift, testified via deposition that she attempted to delay Decedent's departure from the workplace at the end of Decedent's shift after recognizing that Decedent appeared extremely tired. Ms. Stanton explained that following her arrival at the workplace and a short conversation with Decedent, she offered to give Decedent a ride home but that Decedent rejected her offer. Ms. Stanton, after tending to a client, returned to check on Decedent only to find that Decedent had departed from the workplace in her personal vehicle.

Ms. Stanton also stated via affidavit that it was not unusual for Envision employees to "leave work early from time to time for an employee's personal business before their work shift ended as long as there was another Envision staff member at the home to provide services to clients of the home." Ms. Stanton further related that when Decedent left the workplace on the day in question before the end of her shift, it was not the first time Decedent had done so. She explained that such a practice was common and that Envision's administrators had not objected. According to Ms. Stanton, employees completing personal errands while "on the clock" could be called back to their workplace at any time or assigned to do a "company-related chore" should a need arise. Nothing in the record suggests, however, that Decedent had been recalled to the workplace or otherwise asked to perform any work-related acts at the time of the accident.

-11-

The testimony of Decedent's friend, David Stanton, supported the trial court's finding that Decedent's travel during her shift was personal in nature.[1] After leaving the workplace, Decedent placed a telephone call to Mr. Stanton and asked if she could bring him a cup of coffee. Decedent's supervisor, Donna Simerly, conceded that it was not uncommon for Decedent to finish her paperwork and leave her work shift a few minutes early on a Saturday. These facts, however, do not support the inference that Decedent was engaging in an activity that benefitted Envision at the time of the accident or that her employment created the necessity for travel to retrieve coffee for a friend. According to Ms. Stanton, Decedent departed from the workplace early despite Ms. Stanton's request that Decedent remain at work until Ms. Stanton could finish a chore for one of their clients. Based on the undisputed facts, no inference can be drawn that Decedent's act of leaving the workplace before the end of her shift was of benefit to the employer or furthered the employer's interests. Because Decedent's travel served no work-related purpose, it would appear that she had "turn[ed] aside from [her] employer's work or business to serve some purpose of [her] own, unconnected with the employer's business." *See Bowers*, 617 S.W.2d at 156.

Decedent's travel itinerary the day of the accident is distinguishable from the fact pattern found in *Craig. See* 792 S.W.2d at 77. The employee in *Craig* caused an automobile accident while she was in the midst of completing a specific set of work-related errands. *Id.* at 80. In contrast, in the case at bar, Decedent left her place of employment "on a personal mission," as Ms. Gunter concedes in her appellate brief. Based on the above precedent, we conclude that Decedent was not acting within the scope of her employment when she left her place of employment to pursue a personal errand unrelated to work.

Despite her concession that Decedent was on a personal errand at the time of the accident, Ms. Gunter asserts that Decedent's travel fell within the latter's scope of employment because "there [was] material evidence in the record that [Decedent,] at the [time of the accident] was on call, by virtue of her work shift not having [] ended. . . ." Andrea Townsend, Envision's corporate representative, agreed that Decedent could have been called back by Envision at any time during her scheduled shift. Absent evidence supporting a specific work-related mission at the time of the accident, however, this Court cannot agree with Ms. Gunter's assertion that a material issue of fact exists regarding the nature of Decedent's travel on the day of the injury.

This Court has declined to extend liability to employers in circumstances when an employee was "on call," rather than actively completing tasks for the benefit of his or her employer, at the time that the employee caused tortious harm. *See Thurmon v. Sellers,* 62

---

[1] Although these two fact witnesses have the same surname, the record does not establish whether a familial relationship exists between them.

S.W.3d 145, 155 (Tenn. Ct. App. 2001). In *Thurmon*, the employee was driving a vehicle that belonged to his employer and was "on call" at the time of his involvement in an automobile accident. *Id*. at 150. The purpose of his travels, however, was to shop for and purchase golf clubs with a friend. *Id*. As such, this Court determined that liability for the accident could not be extended to the employer merely because the employee was "on call" at the time he was performing a personal errand. *Id*. at 153.

The *Thurmon* Court provided a non-exhaustive set of factors helpful in the evaluation of employer liability in the "on call" employee context. *Id*. at 155. Those factors expressly include the following:

1. Whether, at the time of the accident, the employee's use of the vehicle benefitted the employer;

2. Whether the employee was subject to the employer's control at the time of the accident;

3. Whether the employee's after-hour activities were restricted while on call;

4. Whether the use of the vehicle at the time of the accident was authorized by the employer; and

5. What the employee's primary reason for using the vehicle was at the time of the injury-producing accident.

*Id.* This Court further explained that "the primary focus should be on whether the use of the vehicle at the time of the collision was within the course and scope of employment." *Id.* Following the *Thurmon* Court's determination that the purpose of the employee's trip was solely personal in nature, this Court concluded that the travel was outside the scope of his employment. *Id*. at 156. As this Court explained, "[t]o hold otherwise would extend the doctrine of respondeat superior to unimaginable and inequitable lengths." *Id*.; *see Russell v. City of Memphis*, 106 S.W.3d 655, 658 (Tenn. Ct. App. 2002) (determining that although an employee was on call at the time of an automobile accident, liability could not attach to the employer because the employee's use of the vehicle did not benefit the employer and because the employee's purpose in using the vehicle was purely personal).

Similarly, in the instant action, Decedent's departure from the workplace prior to the end of her shift was for a purely personal purpose. Decedent's travel was not directed by Envision and served only to benefit Decedent and her friend rather than Envision. *See*

*Thurmon,* 62 S.W.3d at 156. Having analyzed the factors enumerated in *Thurmon* for determining whether an employer is liable for the tortious conduct of its on-call employees, we find no basis to impose liability in this case. *See id.* at 155. Of particular importance to the present inquiry is the fourth factor, the primary purpose of an on-call employee's travel at the time of an automobile accident. *Id.* Here, while Decedent remained "on the clock" until 8:00 a.m., she "turned aside from . . ." her shift as a home health nurse, and proceeded ". . . to serve some purpose of [her] own that [was] unconnected with the employer's business. . . ." *Bowers,* 617 S.W.2d at 156. Mr. Stanton, the last person known to have spoken to Decedent before the accident, stated that the subject of Decedent's attention after leaving work and at the time of the accident was purchasing and delivering a cup of coffee to him. This fact is undisputed.

We recognize that Envision had the ability to call on Decedent to return to work during her scheduled shift and that this authority extended to the time of the accident. These circumstances, however, do not change the fact that between 7:30 a.m., the time she left her workplace, and 7:45 a.m., the time the accident occurred, Decedent did not undertake any work-related task. Rather, the undisputed purpose of Decedent's trip was a personal errand, as Ms. Gunter concedes. Based on the absence of facts alleging a different or work-related purpose, we determine that there is no genuine issue of material fact concerning the lack of a basis for imposition of *respondeat superior* liability. We therefore affirm the trial court's grant of summary judgment in favor of Envision concerning Ms. Gunter's *respondeat superior* claim.

## V. Negligent Hiring/Supervision

Ms. Gunter contends that the trial court erred in its determination that Envision could not be held liable for negligent hiring and/or supervision of Decedent. This Court previously has stated that a plaintiff may "recover [from an employer] for negligent hiring, supervision, or retention of an employee" when the plaintiff can establish (1) "the elements of a negligence claim" and (2) "that the employer had knowledge of the employee's unfitness for the job." *See Doe v. Catholic Bishop for Diocese of Memphis,* 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008). Moreover, this Court has explained that claims of negligent hiring and supervision "are independent of claims based on respondeat superior, and the existence of one claim does not render the other claim superfluous or unnecessary." *See Gordon v. Tractor Supply Co.,* No. M2015-01049-COA-R3-CV, 2016 WL 3349024, at *12 (Tenn. Ct. App. June 8, 2016). For that reason, this Court will review Ms. Gunter's claims of negligent hiring and supervision independently from her *respondeat superior* claim addressed above.

As to Ms. Gunter's claim of negligent hiring, this Court has previously elucidated that a claim of "negligent hiring arises only when a particular unfitness of a job applicant

-14-

creates a danger of harm to others which the employer should have known." *See Phipps v. Walker*, No. 03A01-9508-CV-00294, 1996 WL 155258, at *3 (Tenn. Ct. App. Apr. 4, 1996) (citing *Gates v. McQuiddy Office Prods.*, No. 02A01-9410-CV-00240, 1995 WL 650128, at *1 (Tenn. Ct. App. Nov. 2, 1995)); *see also Wishone v. Yellow Cab. Co.*, 97 S.W.2d 452 (Tenn. Ct. App. 1936). The *Phipps* and *Gates* Courts explained that in order to support a claim of negligent hiring, a party must provide "(1) evidence of unfitness for the particular job, (2) evidence that the applicant for employment, if hired, would pose an unreasonable risk to others, [and] (3) evidence that the prospective [employer] knew or should have known that the historical criminality of the applicant would likely be repetitive." *See Phipps*, 1996 WL 155258, at *3; *Gates*, 1995 WL 650128, at *2; *see also Counce v. Accension Health*, No. M2009-00741-COA-R3-CV, 2010 WL 786001, at *5 (Tenn. Ct. App. Mar. 8, 2010).

Here, Envision conducted, as part of its hiring protocol, a background check through the Tennessee Bureau of Investigation ("TBI") and a drug test to identify any potential concerns that might demonstrate that Decedent was an improper hire. According to Ms. Simerly, any criminal history other than a misdemeanor conviction would have caused the applicant to be rejected. Ms. Simerly stated that neither Decedent's background check nor drug screen revealed any cause for concern. Moreover, according to Ms. Simerly, Envision further relied on Decedent's affirmation through her signature on the company's drug-free workplace policy that she would not abuse any drug while employed with Envision. Although Ms. Gunter suggests that Envision created an unreasonable risk in hiring Decedent, the facts presented demonstrate that Envision had no knowledge of or reason to know that hiring Decedent would pose such a risk.

As this Court elucidated in *Gates*, "negligent hiring arises only when a particular unfitness of a job applicant creates a danger of harm to third persons <u>which the employer should have known</u>." *See* 1995 WL 650128, at *2 (emphasis added). Utilizing its pre-employment evaluation protocol, Envision found nothing to suggest that Decedent was unfit for employment at the time of her hiring. Although Ms. Gunter has proffered evidence to suggest that Envision's evaluation of Decedent prior to her hiring was in some way inadequate, we note that Ms. Gunter must provide facts establishing "the elements of a negligence claim" in order to support her claim of negligent hiring. *See Doe*, 306 S.W.3d at 717. Therefore, as one of those elements, Ms. Gunter must allege facts demonstrating that Envision's act of hiring Decedent was the proximate cause of Ms. Gunter's injuries. *See, e.g., Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (providing that in order to establish a *prima facie* claim of negligence, a plaintiff must demonstrate duty, breach of duty, injury, cause in fact, and proximate cause). This Court has previously explained that "the hiring of the employee is not the proximate cause of his acts committed outside the scope of his employment." *See*

*Phipps*, 1996 WL 155258, at *4. Accordingly, because Decedent's act that injured Ms. Gunter was committed outside the scope of Decedent's employment, Decedent's hiring by Envision cannot be the proximate cause of Ms. Gunter's injuries. We therefore affirm the trial court's grant of summary judgment in favor of Envision concerning Ms. Gunter's negligent hiring claim.

We now turn to Ms. Gunter's claim that Envision was negligent in its supervision of Decedent. We note that:

> [U]nder a claim of negligent supervision, an employer is directly liable for breaching its own independent duty to hire competent employees and supervise them appropriately. *See Wicks v. Vanderbilt Univ.*, No. M2006-00613-COA-R3-CV, 2007 WL 858780, at *13 (Tenn. Ct. App. Mar. 21, 2007); *Gates v. McQuiddy Office Products*, No. 02A01-9410-CV-00240, 1995 WL 650128, at *1 (Tenn. Ct. App. Nov. 2, 1995) ("The torts of negligent hiring and negligent supervision are based on the principle that a person conducting an activity through employees is liable for harm resulting from negligent conduct in the employment of improper persons or instrumentalities in the work involving risk of harm to others.")[.]

*Gordon*, 2016 WL 3349024, at *12.

Similar to her claim of negligent hiring, with regard to a claim of negligent supervision, Ms. Gunter must again state facts establishing, *inter alia*, the elements of a negligence claim. *See Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 703 (Tenn. Ct. App. 2012). More specifically, to demonstrate negligent supervision, Ms. Gunter must demonstrate that Envision could "foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred." *See Jones v. Bedford Cty.*, No. M2006-02710-COA-R3-CV, 2007 WL 3202760, at *3 (Tenn. Ct. App. Oct. 31, 2007). As this Court has explained, "[a] defendant is only under a duty to act to prevent injury from a harm that is foreseeable. If the harm that occurred was not foreseeable, then no duty exists, and no negligence can be found." *Smith v. Keyport Self-Storage*, No. W1998-00810-COA-R3-CV, 2000 WL 558604, at *4 (Tenn. Ct. App. May 5, 2000).

In *Smith*, the plaintiff had rented a storage unit from the defendant storage facility, and the defendant's employee stole property from the plaintiff's storage unit. *Id*. at *1. The plaintiff filed an action against the defendant, alleging that the defendant was negligent in its supervision of the employee. *Id*. This Court reversed the trial court's judgment in favor of the plaintiff on a claim of negligent supervision, determining that there was insufficient evidence that the owners of the defendant storage facility were

aware of any wrongdoing or suspicious behavior by the employee. *Id*. at *5. As the *Smith* Court stated:

> While there was some evidence that [the employee] was seen transporting truckloads of items from [the storage facility], there was no evidence that [the owners] knew or should have known of this. The evidence was undisputed that [the employee] had no criminal record and that neither [of the owners] knew of any theft until after [the employee's] employment had ended and her whereabouts were unknown.

*Id*. This Court therefore reversed the trial court's judgment, determining that the trial court erred in failing to direct a verdict for the defendant. *Id*.

In the present action, Decedent's employment record with Envision offered no indication of a propensity for drug use or intoxication while at work. According to Ms. Stanton, the only Envision employee who interacted with Decedent on the day in question, Decedent appeared tired at the end of an overnight shift. Ms. Stanton stated that she did not believe Decedent was intoxicated at work. Ms. Gunter did not provide specific evidence creating a reasonable inference that Envision should have been aware of Decedent's impairment on the day of the accident or at any time prior thereto. Although Ms. Gunter averred that Envision should have been aware of Decedent's medical history, more specifically Decedent's previous treatment for drug addiction, we note that neither a TBI background check nor a pre-employment drug test produced evidence of any cause for concern.

Likewise, no signs of Decedent's purported addiction became apparent in her subsequent work habits during her term of employment with Envision. Envision presented testimony that Decedent was a compassionate worker who performed well with the clients Envision served. According to Ms. Simerly, Decedent was the subject of only one complaint in her thirteen months of employment with Envision, wherein the complainant alleged that Decedent was a "stickler for paperwork and chores. . . ." In addition, the facts set forth in the record indicate that Decedent's own mother and husband were unaware of her alleged substance abuse. As our Supreme Court has explained, "a risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable." *Doe v. Linder Const. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992). Based upon our review of the evidence in the light most favorable to Ms. Gunter, we accordingly conclude, as did the trial court, that Ms. Gunter's injuries were not reasonably foreseeable by Envision.

-17-

With regard to a claim of general negligence, this Court has previously determined that no liability attaches to an employer when its employee causes an automobile accident after leaving the place of employment in a known intoxicated state, absent a showing that an employer in some way contributed to its employee's intoxication. *See Lett v. Collis Foods, Inc.,* 60 S.W.3d 95, 104 (Tenn. Ct. App. 2001). As the *Lett* Court explained, "Tennessee courts have found that there is no 'special relation' such as to impose upon the defendant a duty to control a third party's conduct unless the defendant has the means and ability to so control the conduct of the third party." *Id.* at 100. The *Lett* Court further elucidated:

> From a legal standpoint, [the employer] did not have the means or the ability to control its employee when she made the decision to drive a vehicle in her condition. The employer certainly was under no obligation to allow [the employee] to stay "on the clock" or to stay on its premises when she was too inebriated to work. The employer's passive acquiescence in her leaving the premises and driving away in her own vehicle, acts they had no legal right to prevent, is simply not enough to impose a duty on this employer who was totally blameless in the condition—[the employee's] intoxicated state—that led to the accident and the plaintiff's injuries.

*Lett*, 60 S.W.3d at 105.

The employer's participation in the events leading up to the tragic accident in this case is even less significant than that of the employer in *Lett.* Here, as in *Lett*, the allegedly tortious conduct of the employee occurred while she was driving on a public road after leaving the workplace in her personal vehicle. Similarly, much like the employee's co-workers in *Lett,* Decedent's co-worker offered to assist Decedent with transportation when she noticed Decedent's drowsiness. Decedent refused the offer of assistance and left the workplace of her own accord and without the express permission or knowledge of her supervisor. Thereafter, Decedent's purported tortious conduct harmed a third party who had no special relationship with Envision. Before that day, Decedent's employment record with Envision was superior, such that her supervisors and co-workers who testified in this matter stated that they had no reason to suspect that she had been using or abusing medication. Moreover, in contrast to *Lett*, there is nothing in the record to demonstrate that an Envision supervisor or managerial employee was made aware of Decedent's alleged "over-medicated" or "overworked" state on the day in question or at any previous time.

The facts are uncontroverted that Envision had no knowledge of any "red flags" concerning Decedent's performance at work. Despite Ms. Gunter's allegations that Decedent was "overworked," we note that on the date in question, the record reflects that

Decedent had just completed a work shift of 11.5 hours following a full day off. Viewing the facts in the record in the light most favorable to Ms. Gunter, we conclude that Envision could not reasonably foresee that Decedent would injure Ms. Gunter in an automobile accident after she left the workplace. We therefore affirm the trial court's conclusion that no genuine issues of fact exist concerning Ms. Gunter's negligent hiring and supervision claims.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Envision. Costs on appeal are assessed to the appellant, Angela M. Gunter. This case is remanded to the trial court for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE